218      7
138SC ²  3

# Commonwealth *v.* Valverdi, Appellant.

*Criminal law—Election law—Conspiracy—Assessors—Evidence.*

On the trial of an indictment of election assessors for the illegal registration of persons not resident in the district and not qualified voters therein, the commonwealth may, after having established by competent evidence the offense charged in the indictment, show that the defendants also procured to be placed upon the list of voters a large number of persons who were not naturalized and therefore not qualified to vote. For the purpose of throwing light upon the motives and intentions of the defendants, it is competent for the commonwealth to prove all that the latter did at the time of the offense charged in the indictment, in dealing with the same subject-matter, and which contributed to the same specific purpose.

*Criminal law—New trial—Jurors—Reading of newspapers.*

The granting or refusing of a new trial in a criminal case, upon the ground that during the trial jurors have heard improper oral or have read unauthorized statements concerning the case, is a matter within the discretion of the court below, and the conclusion of that court will only be reversed where there is a clear abuse of discretion; and this is particularly so where the publication was merely a correct narration of the incidents of the trial, and did not refer to any previous misconduct of the defendants.

*Criminal law—Conspiracy—Parties—Acquittal of one party.*

It is not necessary for the commonwealth on the trial of an indictment for conspiracy to establish that all the persons charged in the indictment had been guilty of an unlawful conspiracy; if the evidence establishes that any two have been guilty of the conspiracy charge, they may be convicted although all the others are acquitted.

MITCHELL, C. J., dissents.

8 COMMONWEALTH *v*. VALVERDI, Appellant.

Argued March 28, 1907. Appeals, Nos. 383 and 384, Jan. T., 1906, by Philip Valverdi and Edward H. Wood, from judgment of Superior Court, Oct. T., 1905, Nos. 165 and 166, affirming judgment of Q. S. Phila. Co., Nov. T., 1904, No. 282, on verdict of guilty in case of Commonwealth v. James McCartney, Philip Valverdi and Edward H. Wood. Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Appeal from the Superior Court. See 32 Pa. Superior Ct. 241.

The opinion of the Superior Court, by PORTER, J., was as follows:

The indictment charged the defendants with conspiracy to unlawfully and fraudulently assess and place, and cause and procure to be assessed and placed upon the assessor's list of voters of the thirteenth election district of the first ward of the city of Philadelphia "the names of a large number of, to wit, fifty and more persons, as voters of said thirteenth election district of the first ward aforesaid who did not reside in the said thirteenth election district of the said first ward and were not then and there qualified to vote therein." Upon the trial McCartney was acquitted, and Valverdi and Wood were found guilty and have now taken these appeals.

The first and fourth specifications of error refer to evidence to the admission of which no exception was taken in the court below, and for that reason cannot be considered. The defendants took no general exception to the charge of the court, and upon that ground the tenth, eleventh and thirteenth specifications of error are dismissed.

The commonwealth, having proved that a large number of persons had been assessed and their names placed upon the list of voters of the election district who in fact did not reside in the district and were not qualified voters therein, and that the appellants were active in causing and procuring the names of such persons to be placed upon said list of voters, introduced evidence which tended to establish that the appellants caused and procured to be placed upon said list of voters the names of a large number of persons who, although they resided in the

district, were not qualified to vote therein, because they were foreign born and had never been naturalized, and that the appellants knew that fact.    There was no exception taken to the admission of the evidence as to the registration of unnaturalized persons, but the defendants subsequently moved to strike out this evidence and requested the court to charge the jury that they were not to take it into consideration.    The court refused to strike out the evidence and declined to charge as requested, which rulings are the foundations of the second, third and seventh specifications of error.    These specifications raised but one question : the relevancy of the testimony as to the registration of unnaturalized persons to the issue being tried.    The indictment charged a conspiracy to cause the registration, as voters of the district, of persons who did not reside in said district and were not then and there qualified to vote therein.    The offense as charged referred only to voters of a particular class, and having thus been limited by the indictment, the burden was upon the commonwealth to establish a conspiracy to cause the unlawful registration of persons who came within the class.    Had the evidence been insufficient to justify a finding that there had been a conspiracy to cause an unlawful registration which embraced persons falling within the particular class, the conviction could not be sustained.    The commonwealth having proved, however, that the names of a large number of persons who were not residents of the district, and for that reason not voters, had been placed upon the list of voters and that the appellants had been active in causing this to be done, their motives and intentions in so acting became material to the inquiry as to their guilt or innocence of the offense actually charged.    Were they misled by innocent mistakes, or acting in pursuance of a corrupt combination ?    For the purpose of throwing light upon their motives and intentions it was competent for the commonwealth to prove all that they did at the time of the offense charged in the indictment, in dealing with the same subject-matter and which contributed to the same specific purpose.    The evidence in question directly tended to establish that the placing upon the list of voters of the names of persons who did not reside in the district was not an innocent mistake, but was but a part of a general scheme, to which the appellants were

parties, to cause the registration of a large number of persons who were not voters of the district, and for this reason it was relevant to the issue as to the intentions of the appellants: Commonwealth v. Bell, 166 Pa. 405; Goersen v. Commonwealth, 106 Pa. 477; Commonwealth v. Johnson, 133 Pa. 293; Friend v. Hamill, 34 Maryland, 298; Penn Mutual Life Insurance Company v. Mechanics' Savings Bank & Trust Co., 72 Fed. Repr. 413; Commonwealth v. White, 145 Mass. 392 (14 N. E. Repr. 611); Regina v. Francis, L. R: 2 C. C. R. 128; Blake v. Assurance Society, L. R. 4 C. P. D. 94. The second, third and seventh specifications of error are dismissed.

The fifth specification of error refers to the refusal of the court below to grant a new trial, " in view of the inflammatory, prejudicial and untruthful publications in the newspapers of Philadelphia concerning the trial of the said cause." The depositions taken in support of the motion for a new trial indicated that a number of the jurors had, during the trial, read newspaper accounts of the proceedings, and that publications in question were offered in evidence in support of the motion. The granting or refusing of a new trial in a criminal case, upon the ground that during the trial jurors have heard improper oral or have read unauthorized printed statements concerning the case, is a matter within the discretion of the court below, and the conclusion of that court will only be reversed where there is a clear abuse of discretion: Alexander v. The Commonwealth, 105 Pa. 1; Commonwealth v. Chauncey, 2 Ashmead, 90; Commonwealth v. Haines, 15 Philadelphia, 363; Commonwealth v. Striepeke, 32 Pa. Superior Ct. 82. We have carefully considered the publications in question and are of opinion that, as the articles did not refer to any previous misconduct of the defendants, or discredit any material witness, or misstate the evidence, it is by no means clear that they could have affected the verdict. The learned judge of the court below, in his opinion refusing a new trial, referring to the publications, says: " They narrate incidents of the trial which had already happened in the presence of, or within the hearing of, the jurors themselves, nor do they make false statements of such incidents." The matter was one peculiarly within the discretion of the court below, to be conscientiously

passed upon in view of all the circumstances surrounding the trial, and we cannot say that the conclusion arrived at involved an abuse of discretion.    The fifth specification of error is dismissed, as is also the twelfth for the same reason.

The sixth specification of error refers to the refusal of the court to arrest the judgment, upon the ground that the acquittal of McCartney, the assessor, is a finding that no crime had been committed by him, and, therefore, the other two defendants could not have conspired with him to commit a crime. Nothing is better settled than that it is not necessary for the commonwealth to establish that all the persons charged in the indictment had been guilty of an unlawful conspiracy.    If the evidence establishes that any two have been guilty of the conspiracy charged they may be convicted, although all the others are acquitted.    If these appellants conspired to cause to be placed on the list of voters the names of persons who were not residents of the district they were guilty of the offense charged in this indictment, even if the assessor was not a party to the conspiracy and was the victim of the deception of those who were carrying out the purpose of the unlawful combination.    The offense charged was one which affected all the people of the commonwealth ; its purpose and effect, if successful, was to corrupt a public election, and it was indictable at common law, independently of the provisions of the Act of January 30, 1874, P. L. 31.    The sixth specification is dismissed.

There was evidence which, if believed, warranted the conviction of both the appellants, and the court properly overruled the motion to discharge them, respectively, upon the ground that there was no evidence to connect them with the conspiracy.    The eighth and ninth specifications of error are dismissed.

The judgments in the appeals Nos. 165 and 166, October Term, 1905, are affirmed, and it is ordered that the appellants, Phillip Valverdi and Edward H. Wood, appear in the court below, to the end that they, respectively, be committed to serve such part of their respective sentences as had not been complied with at the time their respective appeals were made a supersedeas.

There were no dissenting opinions.

*Errors assigned* were (1–13) in dismissing the assignments of error to the quarter sessions, and (14) in affirming the judgment of quarter sessions.

*William W. Porter*, with *H. A. Mackey* and *J. Jos. Murphy*, for appellants, cited as to the newspaper publications: Rentzheimer v. Bush, 2 Pa. 88; Com. v. Jacques, 1 Pa. Dist. Rep. 287; Hat Trimmings Case, 49 Fed. Repr. 32; Com. v. Johnson, 5 Pa. C. C. Rep. 236; Com. v. Landis, 12 Phila. 576; United States v. Ogden, 10 Pa. Dist. Rep. 1.

*Joseph H. Taulane*, assistant district attorney, with him *Samuel P. Rotan*, district attorney, for appellee.

OPINION BY MR. JUSTICE MESTREZAT, April 22, 1907:

These are appeals from the judgments of the Superior Court affirming the judgments of the court of quarter sessions of Philadelphia county in which the appellants were convicted of a conspiracy to unlawfully and fraudulently assess and place upon the assessor's list of voters of the thirteenth election district of the first ward of Philadelphia the names of persons as voters of the district who did not reside in the district and were not qualified to vote therein. The appellants were jointly indicted with one James McCartney, the assessor of the district, who was acquitted by the jury.

There is nothing in these appeals which require our special attention. The case was tried with the greatest care by the learned trial judge to whose charge no exception was taken. Numerous points for charge were presented on the trial by counsel for appellants, and all were answered by the court. A motion for a new trial was made for which twelve reasons were assigned. The learned trial court below refused this motion in an exhaustive and convincing opinion in which it reviewed the errors alleged to have occurred on the trial, and supported its legal conclusions by the citation of numerous authorities. Appeals were taken to the Superior Court. There, the cases were presented and heard on thirteen assignments of error which were the same as we have here, except an additional assignment which formally complains of the affirmance of the judgment of the trial court by the Superior Court. There, as

here, more than one-half of the assignments were not supported by exceptions taken by appellants in the trial court, and under our uniform rulings were properly dismissed by the Superior Court without consideration. The other assignments were considered in an elaborate opinion by PORTER, J., in which he discussed at length the questions raised there and here by the assignments and conclusively shows that they are wholly without merit. The judgment of the trial court was unanimously affirmed by the six judges of the Superior Court who heard the case.

We have considered this record with great care, and we find nothing whatever to justify us in interfering with the judgment of either the trial or Superior Court. Each and every material question presented for our consideration was raised and fully considered by the learned Superior Court, whose opinion amply. justifies its conclusions. If we attempted to support its judgment we would simply be repeating its arguments and the authorities it cites.

The offense charged is a grave one. As said in the opinion of the Superior Court, it " was one which affected all the people of the commonwealth ; its purpose and effect, if successful, was to corrupt a public election, and it was indictable at common law independently of the provisions of the Act of January 30, 1874, P. L. 31." The evidence clearly discloses that the two appellants were the chief conspirators to commit this heinous offense, although the jury would have been fully justified in also convicting McCartney. He was manifestly unfit for the official position he occupied, and, speaking charitably, through age and weakness permitted the appellants, evidently adepts in the business, to use him to further their criminal and corrupt designs. As well said by the learned assistant district attorney in his brief: " Had the assessor been a free agent, and not under the absolute control and dictation of the appellants, no one will deny that he was guilty of a most flagrant offense against the election laws, and his acquittal by the jury was a gross miscarriage of justice." Under the law, the three parties were all principals in the crime charged in the indictment, and the jury exercised their undoubted authority and convicted the appellants, and acquitted McCartney, the assessor.

The discretion exercised by the trial court in refusing a new trial on the ground that the jurors had read certain newspaper articles was not abused, as is clearly shown in the opinions filed by the trial judge and by the Superior Court. The learned trial judge said: "They (the articles) narrate incidents of the trial which had already happened in the presence of, or within the hearing of, the jurors themselves, nor do they make false statements of such incidents." The Superior Court said on the same subject: "We have carefully considered the publications in question and are of opinion that, as the articles did not refer to any previous misconduct of the defendants, or discredit any material witness, or misstate the evidence, it is by no means clear that they could have affected the verdict." An examination of the articles in question will show that they contained nothing which would have warranted the court in granting a new trial. They disclosed nothing to the jurors who, if attentive to the testimony, were not fully cognizant of all the articles contained. If, as urged by appellants' counsel, the facts contained in the articles were to the disadvantage of their clients, it is sufficient to say they were fully supported by evidence which the appellants did not, if they could, meet by contradictory testimony.

A careful consideration of the evidence in the case leaves no doubt whatever of the guilt of the appellants of the crime charged against them in the indictments. From the beginning of his duties in making the list of voters, and without the shadow of authority, they took charge of the assessor, and, as it were, led him from house to house, until the list was completed. They absolutely controlled and directed him in every step in making the list of voters. They not only determined what names should go on the voting list, but one of the two wrote nearly, if not all, the names entered on the list. By this means they succeeded in placing on the voter's list of that election district the names of 169 persons who were disqualified as legal voters. The appellants were with the assessor and dictated his action when he sat at the polling place in September to hear applications for striking off the list the names of persons who were not legal voters. They and the assessor being then notified that these persons were disqualified as voters and requested to strike their names from the

list, struck off 109 names, which, with knowledge of the disqualification, they had placed upon it; but the appellants persisted in their criminal conduct by openly and defiantly refusing to permit the assessor to further correct the list by striking from it the other sixty names. A more bold, determined and persistent assault upon the rights of the legal voters of an election precinct than that disclosed by this record is seldom, if ever, brought to the attention of a court of justice. The statutory penalty is wholly inadequate to the offense.

The judgment of the Superior Court and of the trial court in each of the appeals, 32 Pa. Superior Ct. 241, is affirmed, and it is ordered that the appellants, Philip Valverdi and Edward H. Wood, forthwith appear in the court below, to the end that they, respectively, be committed to serve such part of their respective sentences as had not been complied with at the time their respective appeals were made a supersedeas.

MITCHELL, C. J., dissenting:

Guilty or innocent the appellants were entitled to a fair trial according to law, and that they did not get.

They were indicted for one offense, and convicted on evidence of another. The indictment charged conspiracy to put on the registry of voters names of persons who did not reside in the election district; the evidence was that the persons whose names were put on the list did reside in the district, but for want of naturalization or other reasons were not entitled to vote. Both were grave crimes, alike in that they were offenses against the election laws, and would affect the purity of the ballot. But they were not the same, either legally or in fact, and evidence of one was in no sense proof of the other.

The admission of much of the testimony is attempted to be justified on the ground that the commission of similar offenses is competent to show motive and intention as to the offense charged. This principle, dangerous at all times, admissible only as an adjunct and collateral fact, and requiring the strictest judicial control, cannot justify making such evidence the main body of the proof offered as was done here. And especially in a case like the present where the jury were liable

to allow indignation at the offense charged to becloud the crucial question of proof of the guilt of the alleged offender.

Secondly, even if the incompetent evidence had not been received, the proper exercise of judicial discretion should have sustained the motion to withdraw a juror on account of the outrageous comments of the newspapers, which went directly into the jury box during the trial. The public mind, already inflamed on the subject, was directed particularly to these parties and the fact harped upon that others indicted with them had pleaded guilty, but these "elected to take a chance of getting off, and stood trial." The jurors were warned what the public expected of them, and at least one was assailed by name and threatened with the consequences to himself that would follow an acquittal.

A verdict rendered under such compulsion is not what the impartial administration of justice requires.