375 A.2d 331
**COMMONWEALTH of Pennsylvania,**
**Appellant,**

v.

**William Henry BROWN, Appellee.**

Supreme Court of Pennsylvania.

Submitted March 10, 1977.

Decided July 8, 1977.

Robert E. Coville, Dist. Atty., Robert L. Eberhardt, Charles W. Johns, Asst. Dist. Attys., Pittsburgh, for appellant.

Paul R. Gettlemen, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION

EAGEN, Chief Justice.

This is an appeal by the Commonwealth from an order of the Court of Common Pleas of Allegheny County quashing two related indictments. Appellee, William Henry Brown, was indicted by a grand jury on December 16, 1975, for murder and voluntary manslaughter in connection with the death of one Robert Maloney. The grand jury also returned an indictment against Brown on January 12, 1976, for conspiracy to commit murder in connection with Maloney's death. On May 26, 1976, Brown filed a motion to quash the indictments[1] and the trial court issued a rule upon the Commonwealth to show cause why the motion should not be granted. On June 7,

---

1. Although Brown's motion to quash and the court's order granting that motion are phrased in terms of a single indictment, it is clear from the briefs of both parties and the opinion of the court below in support of its order that both indictments were ordered quashed.

1976, the trial court granted the motion to quash. This appeal by the Commonwealth followed.[2]

The indictment charging murder alleged that on or about May 28, 1975, Brown "in and upon the body of one Robert Maloney . . . unlawfully and feloniously did make an assault, and then and there unlawfully and feloniously did intentionally kill and murder the said Robert Maloney . . . ." With respect to voluntary manslaughter, the indictment similarly alleged Brown " . . . feloniously did voluntarily without lawful justification kill and slay the said Robert Maloney . . . ."

The indictment charging conspiracy to commit murder alleged that on or about May 28, 1975, Brown "did conspire and agree with one William Long, Dwayne Baskin and one Frank McKeithen that they or one or more of them would engage in conduct which constituted the offense of [m]urder or of an attempt or solicitation to commit the same, and pursuant to said unlawful conspiracy as aforesaid and in furtherance thereof, the said William Henry Brown, William Long, Dwayne Baskin and Frank McKeithen . . . entered a motor vehicle operated by the said William Henry Brown and proceeded to seek the whereabouts of the said Robert Maloney in the Hill District of the City of Pittsburgh, where he was subsequently located in the 1600 block of Fifth Avenue, whereupon the said WILLIAM LONG left the motor vehicle and after addressing some remarks to the said Robert Maloney shot him five times with a hand gun resulting in his death . . . ."

Two weeks prior to entering the order quashing the indictments against Brown, the same trial judge who

2. The Commonwealth's right to appeal from an order quashing an indictment is well-established. *Commonwealth v. Studebaker,* 240 Pa.Super. 37, 362 A.2d 336 (1976); *Commonwealth v. Murray,* 217 Pa.Super. 307, 272 A.2d 201 (1970); *Commonwealth v. Banks,* 203 Pa.Super. 198, 199 A.2d 473 (1969); see *Commonwealth v. Simpson,* 310 Pa. 380, 165 A. 498 (1933).

granted the motion to quash presided over the jury trial of William Long, who had also been charged with murder, voluntary manslaughter and conspiracy to commit murder in connection with Maloney's death. In that prior proceeding, the trial court granted a demurrer to the conspiracy charge and the jury acquitted Long of the murder and manslaughter charges. In the instant case, the trial court concluded that as a result of the disposition of the Long prosecution, the Commonwealth could not proceed on the indictments against Brown.

Invoking the doctrine of collateral estoppel, the trial court reasoned that Brown's guilt, if any, had to be predicated on the guilty conduct of Long and "[s]ince the Commonwealth failed to establish such guilty conduct at Long's trial, they should be barred from relitigating that identical issue." The trial court's opinion in support of its order, however, overlooked section 306(g) of the Crimes Code, 18 Pa.C.S.A. § 306(g), which the Commonwealth asserts and we agree is directly controlling. This section provides as follows:

> "(g) *Prosecution of accomplice only.*—An accomplice may be convicted on proof of the commission of the offense and of his complicity therein, though the person claimed to have committed the offense has not been prosecuted or convicted or has been convicted of a different offense or degree of offense or has an immunity to prosecution or conviction or *has been acquitted.*" [Emphasis added.]

18 Pa.C.S.A. § 306(g).[3] This provision was patterned after section 2.06(7) of the American Law Institute's

---

**3.** Section 306 of the Crimes Code provides the following framework for criminal accomplice liability, in pertinent part:

"(a) *General rule.*—A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

"(b) *Conduct of another.*—A person is legally accountable for the conduct of another person when:

\* \* \* \* \* \* \* \* \* \*

Model Penal Code (MPC). The commentary to this model provision indicates the basic policy choice it represents:

> "This paragraph follows that modern legislation that deprives the distinction between principals and accessories of its common law procedural significance. This change does not, of course, dispense with the necessity of proving the commission of the crime as an element of liability of the accomplice. The change does open up the possibility that an accomplice may be prosecuted though the person charged with the commission of the crime has been acquitted, a possibility that does not obtain in states that dispense only with requiring the previous conviction of the principal. While inconsistent verdicts of this kind present a difficulty, they are intrinsic to the jury system and appear to be a lesser evil than granting immunity to the accomplice because justice has miscarried in the charge against the person who committed the offense."

[Footnotes omitted.]

Model Penal Code, Comments § 2.04(6) (Tent.Draft No. 1, 1953) p. 38.[4]

> "(3) he is an accomplice of such other person in the commission of the offense.
> "(c) *Accomplice defined.*—A person is an accomplice of another person in the commission of an offense if:
> "(1) with the intent of promoting or facilitating the commission of the offense, he:
> \* \* \* \* \* \* \* \* \* \*
> "(ii) aids or agrees or attempts to aid such other person in planning or committing it . . . ."

18 Pa.C.S.A. § 306(a), (b)(3), (c)(1)(ii). There is no question the indictments here were sufficient to charge Brown with criminal liability within the scope of this section. See *Commonwealth v. Wright*, 235 Pa.Super. 601, 344 A.2d 512 (1975).

**4.** While the MPC Comments were not specifically adopted by the legislature and are therefore not binding, nonetheless they are helpful in resolving problems of interpretation of the Crimes Code provisions. See Toll, *Pennsylvania Crimes Code Annotated* (1974) p. vi.

In *Commonwealth v. Jackson,* 463 Pa. 301, 344 A.2d 842 (1975) wherein we affirmed judgment of sentence on a conviction of murder of the second degree, we considered an issue quite similar to the one now before us. Jackson maintained, *inter alia,* that his conviction, premised on the existence of a conspiracy, could not stand where the alleged perpetrator of the homicide was subsequently found not guilty. We rejected that argument in short order based on the principle expressed in section 306(g). Brown attempts to distinguish *Commonwealth v. Jackson,* supra, from the instant case on the ground that the alleged perpetrator of the *Jackson* homicide was acquitted after Jackson's conviction while Long was acquitted before trial in the instant case. Brown urges us to apply the doctrine of collateral estoppel to the instant case and thus, limit the effect of section 306(g) in the circumstances here presented. Such a result, however, would represent a major expansion of the operation of the doctrine of collateral estoppel in criminal litigation and would significantly undercut the public policy behind section 306.

 Collateral estoppel principles may be applicable in some criminal cases as well as civil cases, but the scope of the doctrine as applied in criminal cases is not coextensive with that applied in civil cases, particularly where, as here, collateral estoppel is invoked on behalf of a defendant who was not a party to the prior adjudication. See generally Annot., 9 A.L.R.3d 203 (1966). Traditionally, collateral estoppel has been limited by, *inter alia,* the rule of mutuality; that is, collateral estoppel does not operate unless the party seeking to take advantage of it would have been likewise bound by an adverse judgment in the prior adjudication. In the context of civil litigation, this mutuality requirement has been eroded in recent years and the modern trend has been for courts to abandon it. See *In Re Estate of Ellis,* 460 Pa. 281, 333 A.2d 728 (1975) ; *Posternack v. American Cas-*

*ualty Co.,* 421 Pa. 21, 218 A.2d 350 (1966); *Helmig v. Rockwell Mfg. Co.,* 389 Pa. 21, 131 A.2d 622 (1951); *Bernhard v. Bank of American National Trust and Savings Association,* 19 Cal.2d 807, 122 P.2d 892 (1942); Annot., 31 A.L.R.3d 1044 (1970). In the context of criminal litigation, however, the concept of mutuality has retained its vitality. Collateral estoppel has generally been applied only in those criminal cases involving defendants who were parties to the prior adjudication. See *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L. Ed.2d 469 (1970); *Commonwealth v. Dooley,* 225 Pa.Super. 454, 310 A.2d 690 (1973); *Commonwealth v. De-Vaughn,* 221 Pa.Super. 410, 292 A.2d 444 (1972).[5] The majority rule remains that a judgment of acquittal of one criminal defendant does not prevent the relitigation of an issue or controversy in the prosecution of another criminal defendant, even though the same transaction is involved. See *State v. Stauffer,* 112 Ariz. 26, 536 P.2d 1044 (1975); *Roberts v. People,* 103 Colo. 250, 87 P.2d 251 (1938); *People v. Armstead,* 30 Ill.App.3d 756, 332 N.E.2d 582 (1975); *State v. Wilson,* 236 Iowa 429, 19

---

**5.** *Ashe v. Swenson,* supra, relied upon by both Brown and the trial court, is inapplicable to the instant circumstances. That case involved the prosecution of a defendant for the robbery of one of six victims, all of whom had been robbed at the same time and place. The defendant had been tried previously for the robbery of another of the victims and had been acquitted. The record at the first trial showed that the only issue had been the defendant's identity and it had been determined he was not one of the robbers. The Supreme Court of the United States held that the principle of collateral estoppel is embodied in the Fifth Amendment guarantee against double jeopardy. The Court defined collateral estoppel as meaning "simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be again litigated *between the same parties* in any future lawsuit." (Emphasis added.) *Ashe v. Swenson,* supra, 397 U.S. at 443, 90 S.Ct. at 1194. *Ashe v. Swenson,* supra, was thus concerned with unfair plural attempts to convict the same defendant of one offense or multiple related offenses, see also *Commonwealth v. Dooley,* supra; *Commonwealth v. DeVaughn,* supra, and, as such, is inapposite in cases where, as here, a criminal defendant seeks the benefit of a prior adjudication to which he is a stranger.

N.W.2d 232 (1945); *State v. Bradley,* 361 Mo. 267, 234 S.W.2d 556 (1950); *State v. Redinger,* 64 N.J. 41, 312 A.2d 129 (1973); *State v. Mondrosch,* 108 N.J.Super. 1, 259 A.2d 725 (1969); *People v. Legrand,* 88 Misc.2d 685, 389 N.Y.S.2d 531 (N.Y.C.Crim.Ct.1976); *Commonwealth v. Quaranta,* 295 Pa. 264, 145 A. 89 (1928); *Schleiss v. State,* 71 Wis.2d 733, 239 N.W.2d 68 (1976); *United States v. Musgrave,* 483 F.2d 327 (5th Cir. 1973); Annot., 9 A.L.R.3d 203 (1966); Cf. *State v. Spillman,* 105 Ariz. 523, 468 P.2d 376 (1970); *People v. Smith,* 271 Mich. 553, 260 N.W. 911 (1935); *People v. Calkins,* 9 N.Y.2d 77, 211 N.Y.S.2d 166, 172 N.E.2d 549 (1961); *Commonwealth v. Parmer,* 364 Pa. 11, 70 A.2d 296 (1950); Annot., 24 A.L.R. 603 (1903); LaFave & Scott, *Criminal Law* § 63 (1972).

A few courts have applied the doctrine of collateral estoppel in criminal cases where a judgment of acquittal in a prior adjudication was claimed to be determinative of an issue in a subsequent prosecution, even though the defendant asserting the claim was not a party in the prior proceedings. *People v. Taylor,* 12 Cal.3d 686, 117 Cal. Rptr. 170, 527 P.2d 622 (1974); *United States v. Bruno,* 333 F.Supp. 570 (E.D.Pa.1971); see *United States v. McArthur,* 419 F.Supp. 186 (D.N.D.1976) (dicta). Influenced by the decline of the mutality requirement in civil litigation, these decisions have taken the position that the same policy considerations that support allowing a litigant to take advantage of the rule of collateral estoppel in a civil case, even though a stranger to the prior adjudication, also favor a similar application in the context of a criminal defense.

For example, one court has asserted that the need for promoting judicial economy by minimizing repetitive litigation is even more acute in criminal trials than in civil trials since crowded dockets inevitably cause undue delays in the criminal justice process, which in turn ultimately exact a price of less effective sentences. *People*

*v. Taylor*, supra. Similarly, it has been asserted that repetitive litigation should be discouraged, particularly in the criminal area, since criminal cases entail greater expenditures of public funds due to the added expense of prosecution and since such a policy would provide an incentive for improving preparation and presentation of the prosecution's initial case. *United States v. Bruno*, supra. Perhaps the strongest argument for permitting a criminal defendant to benefit from another defendant's prior acquittal in circumstances such as presented here is that it is inconsistent and seemingly unfair to hold a defendant liable for the conduct of another, when the actor himself has been exonerated. Such a result, it is argued, compromises the integrity of the judicial system and risks breeding disrespect for our legal institutions by undermining the public's faith in the fairness of the criminal justice process. *People v. Taylor*, supra.

On the other hand, there is also a significant public interest in not compounding the effect of a possibly erroneous or irrational verdict of acquittal. "Society is no less injured by the illegal acts of the aider and abettor even though the principal himself escapes conviction." *State v. Spillman*, 105 Ariz. 523, 525, 468 P.2d 376, 378 (1970). " 'Because there may have been a miscarriage of justice as to one joint offender is no reason why there should also be a miscarriage of justice as to the other joint offender.' " *Roberts v. People*, 103 Colo. 250, 261, 87 P.2d 251, 257 (1938).

In our view, the policy choice has been made in this Commonwealth in favor of protecting the public interest against compounding the effect of an erroneous or irrational acquittal. We find the reasoning of *People v. Taylor*, supra, and *United States v. Bruno*, supra, unpersuasive here since in neither of those cases was the court presented with an expression of public policy as here indicated by section 306(g) of the Crimes Code. The application of the doctrine of collateral estoppel was inap-

propriate instantly and accordingly we hold it was error for the trial court to grant Brown's motion to quash the indictments.[6] 18 Pa.C.S.A. § 306(g); see *Commonwealth v. Jackson,* supra; *Commonwealth v. Parmer,* supra; *Commonwealth v. Quaranta,* supra; Model Penal Code, Comments § 2.04(6) (Tent.Draft.No. 1, 1953); see also *People v. Armstead,* supra; *People v. Legrand,* supra.

The order of the Court of Common Pleas is reversed and the case is remanded.

**6.** The trial court's opinion in support of its order also referred to the principle that acquittal of all other alleged co-conspirators precludes the conspiracy conviction of the remaining co-conspirator. *Commonwealth v. Salerno,* 179 Pa.Super. 13, 116 A.2d 87 (1955); *Commonwealth v. Avrach,* 110 Pa.Super. 438, 168 A. 531 (1933); see generally Annot., 91 A.L.R.2d 700 (1963). Suffice it to say that the conspiracy indictment here alleged more than two co-conspirators, only one of whom had been acquitted, and therefore reliance on that principle was also misplaced. See *Commonwealth v. Valverdi,* 218 Pa. 7, 66 A. 877 (1907); Annot., 91 A.L.R. 2d 700 (1963); LaFave & Scott, *Criminal Law* § 62 (1972).

Thus, we need not and do not express any opinion as to whether under the Crimes Code the fact that the person or all of the persons with whom a defendant is alleged to have conspired have been acquitted or cannot be prosecuted is material to that defendant's guilt of conspiracy.

Also, we need not and do not express any opinion here on the issues whether in a joint trial of an accomplice and the person charged with the perpetration of the crime, an acquittal of the latter should require the acquittal of the former, absent evidence that the alleged accomplice committed the offense himself and whether the judgment of conviction or acquittal of the person charged with the commission of the crime should be admissible in a subsequent prosecution of an alleged accomplice as proof or disproof of the proposition that the crime was committed.