417 A.2d 173

**COMMONWEALTH of Pennsylvania**

v.

**Haddrick BYRD, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 18, 1980.

Decided July 3, 1980.

Reargument Denied Aug. 15, 1980.

Paul G. Hughes, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Division, Ellen Mattleman, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

A jury convicted appellant Haddrick Byrd of murder of the second degree, robbery and conspiracy. Appellant's post-verdict motions were denied and concurrent judgments of sentence of life imprisonment for murder and twenty years imprisonment for robbery were imposed; sentence was suspended on the conspiracy conviction. This appeal then followed.[1] We have reviewed appellant's various claims of error and now affirm the judgments of sentence.

■ Appellant challenges the sufficiency of the evidence for his convictions for murder of the second degree and robbery.[2] These convictions are based on appellant's participation in the 1974 killing of Isadore Levin during early-morning religious services at Kesher Israel Synagogue in Philadelphia. Viewed in the light most favorable to the Commonwealth, *Commonwealth v. Bastone*, 466 Pa. 548, 353

1. Appellant's murder conviction was appealed directly to this Court. See 42 Pa.C.S. § 722(1). Appeals relating to the other convictions have been certified here from the Superior Court. See 42 Pa.C.S. § 705; *Commonwealth v. O'Bryant*, 479 Pa. 534, 537 n.1, 388 A.2d 1059, 1061, n.1, cert. denied, 439 U.S. 990, 99 S.Ct. 589, 58 L.Ed.2d 664 (1978).

2. At the time of the events which gave rise to this prosecution 18 Pa.C.S. § 2502(b) defined murder of the second degree as follows:
 "(b) Murder of the second degree.—A criminal homicide constitutes murder of the second degree when the death of the victim occurred while defendant was engaged as a principal or an accomplice in the perpetration of a felony."
 At the same time, 18 Pa.C.S. § 3701 defined robbery as follows:
 "(a) Offense defined.—
 (1) A person is guilty of robbery if, in the course of committing a theft, he:
 (i) inflicts serious bodily injury upon another;
 (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; or
 (iii) commits or threatens immediately to commit any felony of the first or second degree.
 (2) An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission.
 (b) Grading.—Robbery is a felony of the first degree."

A.2d 827 (1976), the evidence is ample to support the convictions.

The Commonwealth's first witness, Isadore Abramson, testified that he arrived at the synagogue at approximately 6:30 a. m. on the Sunday morning of September 1, 1974. Services normally began at 6:45 a. m. and Abramson arrived early to prepare breakfast for the small congregation. Abramson testified that shortly after 6:30 a. m. two men whom he did not know entered the synagogue. When Abramson asked if he could help them they replied that they just wanted "to see how you pray." Abramson told them that the service would begin when the others arrived in about fifteen or twenty minutes. Abramson testified that during this conversation both men stared at the large safe located in the synagogue.

The two men left the synagogue but returned about fifteen minutes later. By this time approximately eleven congregants had arrived and morning services had begun. The two men were again approached by Abramson and, separately, by another congregant and both times expressed a desire to observe the service. Shortly thereafter, however, as the prayers continued, one of the congregants suddenly began struggling with one of the two men, was pushed away and was shot twice at close range. As he fell, the congregant, Isadore Levin, cried, "He got me . . .." The two men fled. Levin was pronounced dead on arrival at a nearby hospital.

Trial testimony by other congregants corroborated this account of the killing. In addition, Abramson and several other congregants made in-court identifications of appellant as one of the two men involved, although each witness indicated that appellant was not the man who fired the shots. A local merchant also identified appellant as one of the two men he saw, shortly after 7:00 a. m., riding a bicycle past his store. It was established that this was a route away from the synagogue and toward appellant's home.

The Commonwealth's final evidence came from Eugene Wharton, who testified to a statement appellant made to

him when both were incarcerated at the Philadelphia Detention Center in late 1974.[3] Wharton testified that he had known appellant for several years and that when he met appellant at the Detention Center he told appellant that a common acquaintance, Lawrence Dunbar, had been picked up for "the synagogue killing." According to Wharton appellant laughed and proceeded to explain that it was he, appellant, along with a friend Larry Smith who had perpetrated the crime. Appellant then narrated to Wharton how he had been in the area on the morning of the killing looking for a way to make some money when he got the idea of holding up the synagogue. Appellant explained how, after surveying the synagogue, he went to find Smith and persuade him to join in the criminal adventure. Wharton related the remainder of appellant's statement as follows:

"[Appellant] [s]aid he asked Larry did Larry want to make any money and Larry asked him, 'Doing what?' He said that he just been down to the synagogue, you know, and that Jews don't put their money in, you know, in no banks. So he said that would be a good place to stick up. So Larry said, 'All right.' So, he said they strapped up, came on downstairs and they got bicycles and he said they rode back down to synagogue, got off the bikes and went inside. He says they was inside. Same guy approached. The man asked, could he help him. He said, no, that him and his friend had just came to observe the services. He said at that time Larry pulled out a pistol and told the guy it was a stick-up and that the guy didn't go for it and the guy rushed him. He says as the guy grabbed him Larry shot him up under the arm, he said and pushed him back, then shot him again in the chest. So then Larry turned around and ran back out the door and got on his bike and ran, you know, rode back, he says. So he went on outside, you know, to see where Larry had went behind the fact that he figured they was going to still go ahead and stick it up as they planned, but as he seen that he left he got on

3. Appellant was then incarcerated pending trial on unrelated charges.

his bike and rode—caught up with him and said he came back down to the projects together."[4]

The evidence is without question sufficient to support the verdicts of guilty of murder of the second degree and robbery.

■ As a related claim, appellant contends that the evidence was insufficient to support his conspiracy conviction because the Commonwealth failed to prove the existence of any overt act either by him or by his alleged co-conspirator. Section 903(e) of the Crimes Code, 18 Pa.C.S. § 903(e), provides that:

"(e) Overt act.—No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired."

This claim is equally meritless. Competent evidence showed that appellant and Smith, in furtherance of an express agreement to rob the synagogue, armed themselves with a gun and entered the synagogue together. The evidence further showed that, having announced the theft, one of them shot and killed a man who attempted to frustrate their scheme.

■ Appellant next maintains that his conspiracy conviction cannot stand because Smith, his only alleged co-conspirator, was subsequently acquitted of conspiracy at a separate trial. We reject this claim. There is no doubt that the crime of conspiracy requires proof of more than a single participant. 18 Pa.C.S. § 903(a).[5] As Justice Cardozo once

4. N.T. at 117–18.

5. 18 Pa.C.S. § 903(a) defines the crime of conspiracy:
"(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime."

noted: "It is impossible in the nature of things for a man to conspire with himself." *Morrison v. California*, 291 U.S. 82, 92, 54 S.Ct. 281, 285, 78 L.Ed. 664 (1934). Nevertheless, such generalizations do not require that a valid conviction for conspiracy against one defendant must be held in limbo pending the outcome of the separate trial or trials of all alleged co-conspirators. Nor do they require that a valid conspiracy conviction must subsequently be nullified by the acquittal of the other or others charged.

■ At the outset it is important to emphasize certain already well-established principles in this area. There is no doubt, for example, that one convicted of conspiracy is not entitled to relief simply because others charged have not yet been tried. *United States v. Shipp*, 359 F.2d 185 (6th Cir. 1966); *DeCamp v. United States*, 10 F.2d 984 (D.C.Cir. 1926). That the prosecution has *nolle prossed* charges against one or all of the others indicted is equally insufficient to afford a single convicted conspirator any relief. *United States v. Koritan*, 283 F.2d 516 (3rd Cir. 1960) aff'g 182 F.Supp. 143 (E.D.Pa.); *United States v. Fox*, 130 F.2d 56 (3rd Cir.), cert. denied, 317 U.S. 666, 63 S.Ct. 74, 87 L.Ed. 535 (1942); *State v. Goldman*, 95 N.J.Super. 50, 229 A.2d 818 (1967). So too, that the only other co-conspirators have been granted immunity and so cannot be tried does not bar conviction of the remaining defendant. *Hurwitz v. State*, 200 Md. 578, 92 A.2d 575 (1952); *Berry v. State*, 202 Ind. 294, 165 N.E. 61 (1929), 173 N.E. 705 (1930); see *Farnsworth v. Zerbst*, 98 F.2d 541 (5th Cir. 1938) (diplomatic immunity). And, indeed, it is established that where the other alleged co-conspirators are unapprehended, *Rosenthal v. United States*, 45 F.2d 1000 (8th Cir. 1930), unindicted, *United States v. Monroe*, 164 F.2d 471 (2d Cir. 1947), cert. denied, 333 U.S. 828, 68 S.Ct. 452, 92 L.Ed.2d 1113 (1948), dead, *People v. Nall*, 242 Ill. 284, 89 N.E. 1012 (1909), or even, in some instances, unknown, *United States v. General Motors Corp.*, 121 F.2d 376, 411 (7th Cir.), cert. denied, 314 U.S. 618, 62 S.Ct. 105, 86 L.Ed. 497 (1941), there is no basis to disturb a valid conviction for conspiracy. See generally *Gardner v. State*, 286 Md. 520,

524, 408 A.2d 1317, 1320 (1979); Developments in the Law—Criminal Conspiracy, 72 Harv.L.Rev. 922, 973 (1959). The only question still apparently open to any debate, see e. g., *People v. Kuland*, 266 N.Y. 1, 193 N.E. 439 (1934) (question is "arguable"), is whether an acquittal of all alleged co-conspirators should produce a different result. At least in the case, such as this, of a subsequent acquittal, we do not believe that it should.

Admittedly, some authority, including certain decisions of our own Superior Court, does assert that the acquittal of all but one conspirator requires the discharge of the remaining defendant. E. g., *Commonwealth v. Campbell*, 57 Pa.Super. 160, 390 A.2d 761 (1978); *Commonwealth v. Avrach*, 110 Pa.Super. 438, 168 A. 531 (1933); see note 6, infra. This rule, however, had its origins at a time when co-conspirators were jointly tried. In that circumstance a single jury would hear the evidence of conspiracy and, rightly, would not be permitted to find the evidence sufficient to prove a conspiracy involving only one of those charged. The acquittal rule that developed was thus clearly a rule of verdict consistency. *Gardner*, supra 286 Md. at 522–524, 408 A.2d at 1319–20; Developments, supra at 972–74; see e. g., *United States v. Musgrave*, 483 F.2d 327, 333 n.10 (5th Cir.), cert. denied, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973) explaining *Herman v. United States*, 289 F.2d 362 (5th Cir. 1961); see also W. LaFave and A. Scott, Jr., Criminal Law § 62, at 488 (1972). It is evident that *Avrach*, supra, the leading case in our Superior Court, is premised on just such a foundation. In the case of separate trials, however, this consistency rule loses much if not all of its force.

An acquittal at any trial is never a guarantee that no crime has been committed. Rather it signifies only that the Commonwealth has not proved its case to the satisfaction of the jury. Thus in the present case, different verdicts may well have been due solely to the different composition of the two juries. Alternatively, the difference may have been due to a variety of other circumstances, including a difference in the proof offered at trial. As the Fifth Circuit Court of

Appeals has recently explained, "acquittal [of one of the conspirators] could have resulted from a multiplicity of factors completely unrelated to the actual existence of a conspiracy." *United States v. Strother*, 458 F.2d 424, 426 (5th Cir. 1972). It is error to assume that the failure of a jury to convict one conspirator necessarily invalidates the Commonwealth's verdict, won from a different jury, at a separate trial. Such a misconception was clearly exposed by the Supreme Court of Nebraska, which long ago rejected the acquittal rule which appellant urges:

> "It seems to us that reason and sound logic do not support the rule where one of two conspirators is convicted in a separate trial, that he shall be discharged because the second may be acquitted for a multitude of reasons having nothing to do with his guilt. The acquittal of the second conspirator could well result from the death or absence of an important state witness, the incompetency of a confession of the convicted conspirator in the second trial, . . . or for any other reason that would amount to a failure of proof."

*Platt v. State*, 143 Neb. 131, 142, 8 N.W.2d 849, 855 (1943).

This view has been adopted by most of the jurisdictions which have since had occasion to consider the present question. *Gardner v. State*, supra; *People v. Holzer*, 25 Cal. App.3d 456, 102 Cal.Rptr. 11 (Ct.App. 1972); see *United States v. Musgrave*, 483 F.2d 327 (5th Cir.), cert. denied, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973); *State v. Marshall and Brown-Sidorowicz, P.A.*, 2 Kan.App.2d 182, 205, 577 P.2d 803, 820 (Ct.App. 1978); see also *State v. Oats*, 32 N.J.Super. 435, 108 A.2d 641 (1954); but see *Eyman v. Deutsch*, 92 Ariz. 82, 373 P.2d 716 (1962) (3–2; dissent approving *Platt*).

In addition this is the view adopted by the American Law Institute's Draft Model Penal Code. As the Comments to the Model Code explain:

> "[It is] immaterial to the guilt of a conspirator whose culpability has been established that the person or all of the persons with whom he conspired have not been or

cannot be convicted. . . . Under the Draft the failure to prosecute the only co-conspirator or an inconsistent disposition or inconsistent verdict in a different trial would not affect a defendant's liability. This result . . recognizes that inequalities in the administration of the law are, to some extent, inevitable, that they may reflect unavoidable differences in proof, and that, in any event, they are a lesser evil than granting immunity to one criminal because justice may have miscarried in dealing with another."

Model Penal Code, Comments § 5.03 (Tent. Draft No. 10, 1960) 104–106 (footnote omitted). Our own conspiracy statute is based on the Model Code. Although the Model Code Comments are not part of our Crimes Code, these Comments were before our Legislature when it considered and enacted the Crimes Code, and we have previously emphasized that they are entitled to special consideration. *Commonwealth v. Brown*, 473 Pa. 458, 462 n.4, 375 A.2d 331, 334 n.4 (1977).

Finally, the rule we adopt today is strongly supported by our recent decisions concerning accomplice liability. See 18 Pa.C.S. § 306. In *Commonwealth v. Brown*, supra, this Court unanimously rejected the argument that the acquittal of one defendant on a charge of homicide precluded the subsequent trial of another defendant who was charged as an accomplice in the same crime. The Court relied on 18 Pa.C.S. § 306(g) which provides:

"(g) Prosecution of accomplice only.—An accomplice may be convicted on proof of the commission of the offense and of his complicity therein, though the person claimed to have committed the offense has not been prosecuted or convicted or has been convicted of a different offense or degree of offense or has an immunity to prosecution or conviction or has been acquitted."

In light of this controlling statutory provision and the corresponding Comments to the Model Penal Code section from which it was derived, this Court concluded that: "In our view, the policy choice has been made in this Commonwealth in favor of protecting the public interest against compound-

ing the effect of an erroneous or irrational acquittal." 473 Pa. at 466, 375 A.2d at 335.[6] We now conclude that the public interests served by our decision in *Brown* require a similar result here.

Just this Term the United States Supreme Court, in accord with our decision in *Brown*, upheld the conviction of a defendant under the federal aiding and abetting statute, 18 U.S.C.A. § 2, despite the prior acquittal of the alleged actual perpetrator of the offense. *Standefer v. United States,* —— U.S. ——, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). In so ruling the unanimous Court emphasized that its decision did not deviate from the "sound teaching" that "justice must satisfy the appearance of justice." Id. at ——, 100 S.Ct. at 2008 quoting *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954). As the Court explained:

> "This case does no more than manifest the simple, if discomforting, reality that 'different juries [may] reach different results under any criminal statute. That is one of the consequences we accept under our jury system.' *Roth v. United States,* 354 U.S. 476, 492 [77 S.Ct. 1304, 1313, 1 L.Ed.2d 1498] (1957). While symmetry of results may be intellectually satisfying, it is not required. See

**6.** The issue in *Brown* was presented as one of collateral estoppel and our decision was to the effect that such a principle did not preclude subsequent prosecution of an alleged accomplice after acquittal of other co-defendants. The present appellant was tried and convicted before his co-conspirator's acquittal and thus no claim of estoppel is asserted here. Yet this in no way suggests that *Brown* is inapposite. Rather the permissibility of trying a defendant after a co-defendant has already been acquitted on similar charges presents, if anything, a more difficult question. We note that although alleged principal Smith was acquitted of all charges at his subsequent trial, appellant does not challenge his own convictions of robbery or murder on this basis.

We have not ignored our per curiam affirmance of the Superior Court's decision in *Commonwealth v. Campbell,* 257 Pa.Super. 160, 390 A.2d 761 (1978), aff'd, 484 Pa. 387, 399 A.2d 131 (1979), which refused to uphold the conviction of one conspirator where his only alleged co-conspirator had been previously acquitted. Although today's decision casts doubt on *Campbell,* we need not and hence do not now accept the Commonwealth's invitation to reconsider that decision.

*Hamling v. United States,* 418 U.S. 87, 101 [94 S.Ct. 2887, 2899, 41 L.Ed.2d 590] (1974)."

*Id.* This counsel is equally applicable to the present case. The subsequent acquittal of appellant's alleged co-conspirator does not afford appellant any relief.

 Appellant next challenges his convictions for robbery and conspiracy on the ground that the corpus delicti of neither crime was established prior to the introduction of his inculpatory statement. As appellant correctly states, a criminal conviction may not stand merely on the out of court confession of one accused, and thus a case may not go to the fact finder where independent evidence does not suggest that a crime has occurred. *Commonwealth v. Ware,* 459 Pa. 334, 366 n.41, 329 A.2d 258, 274 n.41 (1974). Nevertheless, as our cases establish, this threshold requirement is not equivalent to the Commonwealth's ultimate burden of proof. Although independent corroborative evidence is insufficient if it is merely equally as consistent with accident as with crime, *Commonwealth v. Leslie,* 424 Pa. 331, 227 A.2d 900 (1967), the prosecution has no duty to exclude the possibility of accident in order to establish the corpus delicti. *Commonwealth v. Moore,* 466 Pa. 510, 515, 353 A.2d 808, 810 (1976); *Commonwealth v. Ware,* supra 459 Pa. at 366–67, 329 A.2d at 274–75; *Commonwealth v. May,* 451 Pa. 31, 33, 301 A.2d 368, 369–70 (1973); *Commonwealth v. Turza,* 340 Pa. 128, 135, 16 A.2d 401, 405 (1940). Before introducing an incriminating out-of-court statement the Commonwealth need not prove the existence of a crime beyond a reasonable doubt. *Commonwealth v. Moore,* supra, 466 Pa. at 515 n.2, 353 A.2d at 810; *Commonwealth v. Ware,* supra at 367 n.43, 329 A.2d at 275. Given the limited nature of the corpus delicti requirement, we believe the Commonwealth did produce sufficient independent evidence of both robbery and conspiracy.

Several eyewitnesses described how appellant and another entered the synagogue together shortly after 6:30 a. m. on a Sunday morning, how they stared fixedly at the congregation's safe, how they left together and returned together

minutes later armed with a weapon. Independent evidence also established that after a brief confrontation with a sixty-nine year old congregant who had been engaged in prayer one of the men twice shot the congregant and killed him. Finally, independent evidence established that the two men then fled together. We believe this evidence is sufficiently indicative of both a criminal agreement and robbery to permit introduction of appellant's incriminating statement.[7]

Appellant next contends that the trial court erred in permitting the Commonwealth to introduce evidence of a prior consistent statement by Eugene Wharton. After Wharton testified to his conversation with appellant, Wharton was subjected to vigorous cross-examination. This included a lengthy review of criminal charges outstanding against him and of certain plea bargain agreements he had admittedly made in return for his testimony against appellant. In particular, defense counsel placed considerable emphasis on Wharton's acknowledgment that he had agreed to testify only after securing his bargain with the Commonwealth. And by a series of disparaging questions defense counsel clearly attempted to suggest to the jury that Wharton's direct testimony was a fabrication, created to advance his own interests.[8] The Commonwealth was then permitted

7. As our prior cases have explained, the reason for the corpus delicti rule is to prevent conviction where no crime has been committed. See e. g., *Commonwealth v. Turza*, 340 Pa. 128, 134, 16 A.2d 401, 404 (1940). Yet there can be no doubt in this case that criminal activity was afoot. Appellant, it should be noted, does not challenge the existence of a corpus delicti for his murder conviction. For there is no question that the corpus delicti of homicide was produced: a death caused by some criminal agency. See *Commonwealth v. Ware*, 459 Pa. 334, 365–67, 329 A.2d 258, 274 (1974). And appellant does not challenge the admission at trial of his statement to Wharton in order to fix the level of the homicide. See *Commonwealth v. Weeden*, 457 Pa. 436, 444–45, 322 A.2d 343, 347–48 (1974), cert. denied, 420 U.S. 937, 95 S.Ct. 1147, 43 L.Ed.2d 414 (1975); *Commonwealth v. Leamer*, 449 Pa. 76, 83–84, 295 A.2d 272, 275 (1972).

8. The following is but one example of defense counsel's questioning:
"Q. Well, how many people were in the room when this conversation *allegedly* took place?
A. Maybe about 15 in each room.

to introduce testimony of Wharton's attorney which established that Wharton had given the attorney a similar account of his conversation with appellant prior to the time that the agreement with the Commonwealth was completed.

It is settled that prior consistent statements are admissible if relevant to rebut a suggestion of recent fabrication. *Commonwealth v. Wilson*, 394 Pa. 588, 148 A.2d 234, cert. denied, 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82 (1959); 4 Wigmore, Evidence § 1129 (Chadbourn rev. 1972). In our view the present testimony was relevant, if only minimally so, to negate the defense suggestion that Wharton's testimony was manufactured as a result of his own successful plea arrangements.

Moreover, the trial court carefully cautioned the jury that the attorney's statement was only to be considered for this limited purpose, and not to prove the truth of Wharton's testimony. Given defense counsel's intense cross-examination, we cannot say that the trial court abused its discretion in permitting Wharton's attorney to testify subject to the appropriate cautionary instructions.

Appellant also challenges a remark by the district attorney, in open court at the end of the Commonwealth's case, that there were "four other eyewitnesses" to the crime which the Commonwealth did not intend to call. Defense counsel's immediate objection to this statement was sustained and the court promptly instructed the jury that "[t]he only witnesses we have in this case are those that testified from the witness stand." Outside the hearing of the jury the district attorney sought to explain his remark. He believed that he had the obligation to explain that the Commonwealth had made these witnesses available to the defense in order to avoid an instruction that the jury could

Q. Were there 15 people in the same room that you and Mr. Byrd were *supposed to be* in?
A. No . . . ."
N.T. at 130 (emphasis added). This Court has previously approved the practice of rehabilitation by prior consistent statements in response to disparaging cross-examination such as this. *Commonwealth v. Vento*, 410 Pa. 350, 353–54, 189 A.2d 161, 163 (1963).

infer from the Commonwealth's failure to call them that their testimony would be unfavorable to the Commonwealth. See *Commonwealth v. Jones,* 452 Pa. 569, 308 A.2d 598 (1973). The trial court then explained that such a showing of availability should have been made outside the jury's hearing. Appellant now contends that the district attorney's comment constitutes reversible error.

Although the district attorney's remark may have been improper, it does not require the remedy of a new trial.

> "Comments by the district attorney do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict."

*Commonwealth v. Van Cliff,* 483 Pa. 576, 582, 397 A.2d 1173, 1176, cert. denied, 441 U.S. 964, 99 S.Ct. 2412, 60 L.Ed.2d 1070 (1979), quoting *Commonwealth v. McNeal,* 456 Pa. 394, 400, 319 A.2d 669, 673 (1974). *Commonwealth v. Goosby,* 450 Pa. 609, 301 A.2d 673 (1973). Here the challenged statement was an isolated remark during the course of a three day trial. Additionally, the trial court immediately and properly cautioned the jury to disregard the statement, and again during his charge to the jury instructed them that only evidence produced at trial should be considered. In such circumstances, a new trial is not required. *Commonwealth v. Martinolich,* 456 Pa. 136, 148–50, 318 A.2d 680, 687–88 (1974). Moreover, defense counsel did not move for a mistrial, and was apparently satisfied with the court's cautionary instruction.[9]

Finally, appellant claims that the trial court erred in his charge to the jury (1) because the court's instructions

---

**9.** We note, in any event, that from the testimony already produced it was obvious that several other congregants had been present at the time of the killing and so would necessarily have been possible Commonwealth witnesses. Since several of the Commonwealth witnesses actually called gave merely cumulative testimony, the jury could well have believed this would have been true of any additional witnesses.

created the impression that if the jury found appellant guilty of conspiracy they must also find him guilty of murder; (2) because the court gave conflicting instructions on the elements of murder; and (3) because the court failed to charge separately on 18 Pa.C.S. § 306, which sets forth the basic requirements for accomplice liability. Since 1968 Pa.R.Crim.Pro. 1119(b) has provided that:

"(b) No portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury."

Our review of the record convinces us that none of appellant's present objections were timely presented to the trial court and hence that none are properly before us. *Commonwealth v. James*, 483 Pa. 425, 397 A.2d 417 (1979). In fact the record establishes that, having prompted the trial court further to charge the jury on the requirements of conspiracy, defense counsel indicated his satisfaction with the court's charge on all of these points.

Judgments of sentence affirmed.