David ROBERTSON, Appellant

v.

Superintendent Edward KLEM; The District Attorney of the County of Fayette; The Attorney General of the State of Pennsylvania.

No. 07–2581.

United States Court of Appeals, Third Circuit.

Argued April 22, 2009.

Filed: Aug. 28, 2009.

---

Thomas L. Kirsch, II, Linda T. Coberly, John F. Kness (Argued), Winston & Strawn LLP, Chicago, IL, Attorneys for Appellant.

Jack R. Heneks, Jr. (Argued), Nancy D. Vernon, Office of District Attorney of Fayette County, Uniontown, PA, Attorneys for Appellees.

Before: SCIRICA, Chief Judge, SLOVITER and FISHER, Circuit Judges.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Petitioner David Robertson was convicted by a jury in Pennsylvania state court of two counts of conspiracy to commit murder arising out of the deaths of Edward and Karen Povlik, although he was acquitted of the murders by the same jury. He was sentenced to a five-to-ten-year term of imprisonment on each of the two counts, which were to run consecutively. After exhausting his direct and collateral appeals in the Pennsylvania courts, Robertson filed a petition for federal habeas relief, alleging as relevant here that the evidence was insufficient to support his conviction for two conspiracies. That is, Robertson contends that the evidence produced at trial proved at most one conspiracy that encompassed the killings of both Povliks.

The District Court adopted the findings and recommendations of the Magistrate Judge and denied the petition. However, we conclude that the evidence was insufficient to allow a rational trier of fact to find that Robertson participated in two conspiracies and that the Pennsylvania courts' contrary conclusion was an unreasonable application of clearly established Supreme Court precedent. Therefore, we will reverse.

## I. Background

### A. The Murders

■ This case arises out of the murders of Edward and Karen Povlik, both drug dealers, who were killed sometime during the late night of December 31, 1994, or early morning of January 1, 1995, at their home outside of Connellsville, Pennsylvania. After several years of investigation, Robertson was charged with two counts of first and third degree murder and two counts of conspiracy to commit criminal homicide. The Commonwealth's theory of the case was that Robertson obtained the murder weapon and provided it to Gerald Powell, who was the triggerman.[1]

The evidence at trial established that the Povliks illegally sold prescription drugs, such as morphine, out of their residence and that Robertson was one of their customers. On December 31, 1994, Robertson went to the Povliks' home with his friend John Mongell to purchase morphine. According to Mongell, when they arrived at the Povliks' home, Robertson "folded his knees down ... and sat like on the floor of my car," apparently hiding from the Povliks. App. at 316. Mongell purchased morphine and then left with Robertson.

Later that day, Robertson, his girlfriend (Donna Jo Mathews), and her two children were at a New Year's Eve Party at the home of another friend, Greg Rosensteel. Robertson asked to borrow a .22 caliber, nine-shot revolver from Rosensteel, ostensibly in order to do some target practice. Rosensteel lent him the gun.

Subsequently, at about eight or nine o'clock that evening, Robertson called Mongell and stated that "he was going to go down to the Povliks" and that "he was going to do something that he didn't want to do" and "cause some trouble." App. at 319. Robertson left Rosensteel's house between ten and eleven P.M. to take Mathews' son to the home of Mathews' mother. Robertson returned to Rosensteel's house sometime before midnight and then left with Mathews and her daughter at around one in the morning of January 1, 1995.

---

1. Powell was charged with two counts of murder and two counts of conspiracy to commit murder. After a separate trial, Powell was acquitted on all counts. Under Pennsylvania law, the fact that all alleged co-conspirators are acquitted does not undermine a defendant's otherwise valid conviction for conspiracy. *Commonwealth v. Byrd,* 490 Pa. 544, 417 A.2d 173, 176–77 (1980).

When Mathews woke up later on January 1, Robertson was gone and did not return until about eleven or eleven-thirty A.M. Later that day or the next, Robertson returned the revolver to Rosensteel. They did not discuss whether Robertson had used the gun, but Robertson stated that he had cleaned it.

At trial, the Commonwealth introduced testimony from several witnesses that Robertson made inculpating statements in the months following the Povliks' murder. In either February or March 1995, Robertson was traveling with Rosensteel and Robertson's cousin Tina Stockman. They happened to drive by a man working on a car alongside the road; Robertson stopped the car and got out and spoke to the man. According to Rosensteel, when Robertson re-entered the car, "he made a statement about that that was the guy that pulled the trigger, and I asked him what he was talking about, and he made reference to the people that got killed in the trailer [the Povliks]." App. at 261. Robertson also stated at that time that "he [Robertson] got the gun, but that [Powell] was the guy who pulled the trigger." App. at 261.

Further, Stockman testified that she heard Robertson refer to the murders on another occasion. Specifically, Robertson stated that "I might have got the gun, but I didn't pull the trigger" and that Powell was the shooter. App. at 51. Stockman also testified that Robertson was able to describe the position of the Povliks' bodies at the murder scene.[2] Finally, another friend, Mary Ann Kraynak, testified that she heard Robertson state that "he was with Gerald Powell, picked him up at a party in Breakneck, went to the Povliks' and bad things happened." App. at 528.

The Commonwealth also introduced forensic evidence demonstrating that the revolver that Robertson borrowed from Rosensteel was operable and that bullets recovered at the Povliks' home possessed "class characteristics" consistent with that revolver. App. at 499. However, the Commonwealth's expert could not specifically conclude that the bullets recovered at the crime scene were fired from Rosensteel's revolver due to extreme fragmentation and mutilation of the bullets. There was no other physical evidence to link Robertson to the murders.

### B.  State Court Proceedings

#### 1.  Conviction and Sentence

Robertson was not arrested until 2000, at which time he was residing in Florida; he was extradited to Pennsylvania for trial. He was charged with two counts of murder and two counts of conspiracy. Based on the evidence described above, the jury convicted Robertson of two counts of conspiracy to commit murder and acquitted him on the substantive murder counts. The Court of Common Pleas for Fayette County sentenced Robertson to two consecutive terms of five-to-ten-years imprisonment on each conspiracy count.

We note that the jury instructions accurately stated the basic elements of a conspiracy under 18 Pa. Cons.Stat. Ann. § 903, including the requirements of an agreement, a shared intent to bring about the underlying crime, and an overt act in furtherance of the conspiracy. However, as argued by Robertson, the jury instructions failed to address 18 Pa. Cons.Stat. Ann. § 903(c), which provides that if "a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship."

---

**2.** Edward Povlik's body was found immediately inside the front door of the trailer home. Karen Povlik's body was found in another room of the home; she was found holding a telephone.

### 2. Direct Appeal

Following his conviction, Robertson filed a motion for a new trial, arrest of judgment and judgment of acquittal with the Court of Common Pleas. As relevant here, Robertson argued that the evidence was insufficient to support his conviction on the conspiracy counts and that it was against the weight of the evidence. The Court of Common Pleas rejected those contentions. It relied on the testimony recounted above that established that Robertson had purchased drugs from the Povliks, that Robertson had borrowed a revolver that was consistent with the murder weapon, and that Robertson had made several inculpatory statements.

On his direct appeal to the Superior Court, Robertson renewed his contentions that his conviction was not supported by sufficient evidence and was against the weight of the evidence. The Superior Court rejected those claims, concluding that Robertson's "statements and admissions allow for the reasonable inference that he and Gerald Powell had entered into *an agreement* to murder the Povlic [sic] couple by means of the .22 caliber revolver which [Robertson] borrowed from Rosensteel." App. at 154 (emphasis added). Robertson also argued that the two counts of conspiracy should have merged for sentencing because the evidence did not establish two conspiracies. The Superior Court concluded that this claim was in essence a challenge to the sufficiency of the evidence with regard to the existence of two conspiracies and that Robertson had failed to preserve that specific issue for appeal because he (wrongly) framed the issue as a challenge to the legality of his sentences.

### 3. PCRA Proceedings

After the Pennsylvania Supreme Court declined to hear Robertson's direct appeal, Robertson filed, with counsel, an application for post-conviction relief pursuant to the Pennsylvania Post–Conviction Relief Act ("PCRA"). The Court of Common Pleas rejected Robertson's claims for PCRA relief.

Robertson appealed, pro se, to the Superior Court, which affirmed. The Superior Court rejected Robertson's claims that he received ineffective assistance of counsel at trial, on his direct appeal, and on his PCRA claims before the Court of Common Pleas. It also rejected Robertson's argument that he was entitled to a new trial based on newly discovered evidence.

Finally, as most relevant here, the Superior Court rejected Robertson's claim that the evidence was insufficient to prove the existence of two conspiracies. The Superior Court noted that Robertson had waived that issue on his direct appeal, but concluded that it could consider the merits of Robertson's claim because he alleged that "his counsel on direct appeal was ineffective for failing to set forth the correct standard and in causing the issue to be waived" and therefore Robertson "properly layered the issue." App. at 34 n. 7.

On the merits, the Superior Court noted that Pennsylvania courts consider the totality of the circumstances in determining whether a single conspiracy or multiple conspiracies have been established. The Superior Court recognized that several factors supported Robertson's argument that the evidence was sufficient to prove only a single conspiracy, including that the Povliks were killed at approximately the same time; were killed with the same firearm and at the same location; and that the same person or persons killed them. However, the Superior Court concluded that "the central factor here is the number of victims" and that the "objective of the first conspiracy was the criminal homicide of Edward James Povlik and the objective of the second conspiracy was the criminal

homicide of Karen Marie Povlik." App. at 37. The Court also noted that, under Robertson's position, "one agreement to kill twenty people should be punished the same as one agreement to kill one person, because there was only a single overarching conspiracy. We reject [that] argument." App. at 38.[3]

### C. Federal Habeas Proceedings

Robertson then filed a petition for federal habeas relief pursuant to 28 U.S.C. § 2254. Robertson presented two claims for relief: (1) that he received ineffective assistance of trial counsel and (2) that the evidence was insufficient to demonstrate the existence of two conspiracies.

The District Court referred the matter to the Magistrate Judge, who filed a report recommending denial of Robertson's petition and denial of a certificate of appealability. The District Court accepted those recommendations. Robertson then filed a notice of appeal of that decision; we construed that notice as a request for a certificate of appealability and granted the request "as to whether sufficient evidence in the trial record supports Appellant's multiple conspiracy convictions." App. at 21. We denied a certificate of appealability as to Robertson's ineffective assistance of counsel claim. Because only the insufficiency of the evidence claim is before us, we will review the District Court's opinion adopting the Magistrate Judge's report only as to that claim.

### II. Jurisdiction and Standard of Review

■ The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we review a district court's denial of habeas relief de novo. *Vega v. United States*, 493 F.3d 310, 314 (3d Cir. 2007).

Habeas relief is precluded on any claim that the state court adjudicated on the merits, unless the state court's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

### III. Discussion

■ Robertson raises two related but distinct issues on his appeal. First, he argues that the Superior Court's rejection of his claim that the evidence was insufficient to prove two conspiracies beyond a reasonable doubt denied him due process and was an unreasonable application of *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Second, he contends that the trial court's jury instructions were so deficient as to relieve the Commonwealth of its obligation to prove beyond a reasonable doubt the existence of multiple conspiracies. We focus on Robertson's first issue.

■ "The requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt dates at least from our early years as a Nation." *In re Winship*, 397 U.S. at 361, 90 S.Ct. 1068. Indeed, "[t]he reasonable-doubt standard plays a vital role in the American scheme

---

**3.** Robertson did not appeal the Superior Court's denial of his PCRA claims to the Pennsylvania Supreme Court. However, his failure to do so does not imply that he failed to exhaust his state remedies on his insufficiency of the evidence claim. *See In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases*, No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) (providing that defendant need not petition for allowance of appeal to Pennsylvania Supreme Court of denial of PCRA relief to be deemed to have exhausted state remedies).

of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error." *Id.* at 363, 90 S.Ct. 1068. The reasonable doubt standard recognizes that the "accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction." *Id.* Further, "[i]t is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned." *Id.* at 364, 90 S.Ct. 1068. Thus, "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.*

■ Further, in *Jackson v. Virginia,* the Supreme Court held that "[u]nder the *Winship* decision, it is clear that a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim" and that "it follows that such a claim is cognizable in a federal habeas corpus proceeding." 443 U.S. 307, 321, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also Fiore v. White,* 531 U.S. 225, 228–29, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001) (per curiam) ("We have held that the Due Process Clause of the Fourteenth Amendment forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt."). When assessing such claims on a petition for habeas relief from a state conviction, the sufficiency of the evidence standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson,* 443 U.S. at 324 n. 16, 99 S.Ct. 2781.

■ A Pennsylvania statute provides that a "person is guilty of conspiracy ... to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime ...; or (2) agrees to aid such other person or persons in the planning or commission of such crime." 18 Pa. Cons. Stat. Ann. § 903(a). Significantly for the issue before us, it also states that "[i]f a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." 18 Pa. Cons.Stat. Ann. § 903(c). Thus, a single conspiracy can include multiple underlying crimes. Stated another way, the Commonwealth bore the burden of proving beyond a reasonable doubt that Robertson and Powell (the alleged killer) entered into *two* agreements or *two* conspiratorial relationships, one to kill Edward Povlik and another to kill Karen Povlik. It did not do so.

■ The Pennsylvania Supreme Court has adopted a totality of the circumstances test to determine whether a particular case involves one conspiracy or multiple conspiracies. Under this test, Pennsylvania courts consider: "The number of overt acts in common; the overlap of personnel; the time period during which the alleged acts took place; the similarity in methods of operation; the locations in which the alleged acts took place; the extent to which the purported conspiracies share a common objective; and the degree to which interdependence is needed for the overall operation to succeed." *Commonwealth v. Andrews,* 564 Pa. 321, 768 A.2d 309, 316 (2001) (quotation omitted).

Robertson contends that the Commonwealth failed to provide sufficient evidence to allow a rational jury to find two agree-

ments or two conspiratorial relationships under Pennsylvania law. We agree. The Commonwealth introduced evidence that Robertson and Powell were the only conspirators for both murders; that Robertson obtained a single revolver that was consistent with the weapon used to commit both murders; and that Edward and Karen Povlik were killed at the same time and in the same place. Nothing in this evidence regarding the commission of the murders would allow a rational jury to conclude that the murders were the result of two separate conspiracies.

Indeed, the Commonwealth simply failed to introduce any direct or circumstantial evidence to suggest that the murders were the result of multiple conspiracies. To show motive, the Commonwealth introduced evidence that Robertson engaged in illegal transactions involving prescription drugs at the Povliks' residence. The Commonwealth also introduced the testimony of Mongell, a friend of Robertson, that Robertson told him on the night of the murders that Robertson was "going to go down to the Povliks ... to cause some trouble." App. at 319. Again, this evidence fails even to remotely hint at the existence of separate conspiracies for each murder. Similarly, nothing in Robertson's inculpatory statements following the murders suggests that the murders were motivated by different criminal objectives or resulted from separate agreements. In sum, a rational jury could conclude from the evidence at trial only that Robertson and Powell entered into one conspiratorial relationship which encompassed both murders.

This conclusion is strongly supported by the Pennsylvania case law regarding multiple conspiracies. For example, in *Commonwealth v. Barnes*, 871 A.2d 812 (2005), the defendant and several others conspired to sell drugs. During one drug transaction, one of the co-conspirators killed a prospective buyer and thereafter the defendant and the murderer robbed the buyer. *Id.* at 816. The defendant was convicted of conspiracy to commit murder, conspiracy to commit robbery, accomplice to robbery, and conspiracy to sell controlled substances. *Id.* at 814. The Superior Court reversed. It concluded that the defendant could be convicted of only the underlying conspiracy to sell controlled substances because the drug transactions, murder, and robbery were part of one continuous conspiratorial relationship. *Id.* at 821. The Superior Court focused on the facts that the drug transactions, murder, and robbery occurred within a twenty-four hour period at the same location and "involved the same actors, and were in furtherance of the same objective." *Id.*

Similarly, the evidence in this case was that the same conspirators committed two murders at the same time and place with the same murder weapon; the Commonwealth offered no other evidence to suggest that Robertson and Powell reached separate agreements related to each murder. This is not a case where the evidence established that the conspirators agreed to kill one person and only later separately agreed to kill another. *Cf. Commonwealth v. Koehler*, 558 Pa. 334, 737 A.2d 225, 231, 245 (1999) (upholding defendant's conviction of two conspiracies to commit murder where defendant and murderer agreed to kill first victim, completed that murder and disposed of the body, and then agreed to kill first victim's son).

The only reason given by the Superior Court to support its conclusion that the evidence was sufficient to establish two conspiracies was that there were two victims. *See* App. at 37 ("[T]he central factor here is the number of victims."). That is, the Superior Court inferred, simply from the existence of two victims, that the evidence was sufficient to allow a rational jury to find that Robertson and Powell

entered into separate agreements, one of which had the objective of killing Edward Povlik and the other of which had the objective of killing Karen Povlik. This conclusion was an unreasonable application of clearly established Supreme Court precedent, specifically *In re Winship*'s holding that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364, 90 S.Ct. 1068.

The fact that both Edward and Karen Povlik were killed cannot, by itself, support the inference that Robertson and Powell entered into separate agreements to commit each murder given the Pennsylvania conspiracy statute's express statement that "a person [who] conspires to commit a number of crimes ... is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." 18 Pa. Cons.Stat. Ann. § 903(c). The Commonwealth had to prove that the murders were the result of separate agreements or conspiratorial relationships, and, as noted above, it failed to do so.

We can understand, and indeed sympathize with, the Superior Court's intuitive rejection of Robertson's argument that "one agreement to kill twenty people should be punished the same as one agreement to kill one person[ ] because there was only a single overarching conspiracy."

App. at 38. The Superior Court equated the harm done to the victims with the punishment. But Robertson was not convicted of two murders. One agreement to kill twenty (or two) people is a single conspiracy under the plain terms of 18 Pa. Cons.Stat. Ann. § 903(c) and therefore a defendant involved in such a case can be convicted of only a single count of conspiracy.

Indeed, the Superior Court stated that, "[a]s we discussed on direct appeal, the jury obviously believed that [Robertson] entered into *a conspiratorial agreement* to kill both Karen and Edward Povlik," App. at 37 (emphasis added), but then concluded, without explanation, that there were two conspiracies. The Superior Court relied entirely on the number of victims to hold that two conspiracies existed, notwithstanding that the evidence was sufficient only to support a finding of a single conspiratorial agreement.

▬▬ In sum, the evidence was insufficient to support Robertson's conviction on two counts of conspiracy to commit murder because the Commonwealth failed to prove that the murders at issue, which involved the same conspirators, the same murder weapon, and occurred at the same time and place, were the result of separate agreements or conspiratorial relationships. Moreover, the Superior Court's contrary conclusion was an unreasonable application of clearly established federal law as established by the Supreme Court.[4] Therefore, Robertson is entitled to habeas relief.[5]

---

**4.** The Commonwealth does not argue that, if the evidence was insufficient to prove two conspiracies, such error was harmless. Indeed, the denial of the right to a jury verdict of guilt beyond a reasonable doubt is a structural error not subject to harmless-error analysis. *See* 2 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 31.3 (5th ed.2005).

**5.** As should be clear and as Robertson concedes, the evidence was sufficient to convict

Robertson of a single conspiracy. Thus, Robertson should be re-sentenced on a single count of conspiracy to commit murder in the Pennsylvania courts.

Currently, a conspiracy to commit murder may be punished by up to forty years imprisonment. 18 Pa. Cons.Stat. Ann. § 1102(c). However, at the time of the murders at issue, Pennsylvania law provided that "[a]n attempt, solicitation or conspiracy to commit murder" was "a felony of the second degree," 1995 Pa.

## IV. Conclusion

For the above-stated reasons, we will reverse the District Court's denial of Robertson's petition and remand for further proceedings consistent with this opinion. In particular, the District Court should order the Commonwealth authorities to free Robertson unless he is re-sentenced in the Pennsylvania courts for a single count of conspiracy within a period of time affixed by the District Court.[6]

Legis. Serv. Sp. Sess. No. 1, Act 1995–3 (S.B. 16) (SS1) (West), and was subject to a maximum sentence of ten years imprisonment, 18 Pa. Cons.Stat. Ann. § 1103(2); *see generally Commonwealth v. Sims*, 591 Pa. 506, 919 A.2d 931, 935 n. 3 (2007). The provisions related to conspiracy to commit murder in force at the time of the conspiracy must guide Robertson's re-sentencing. *See United States v. Tykarsky*, 446 F.3d 458, 480 (3d Cir.2006) ("[I]f a defendant completes a crime before an increased penalty takes effect, it would violate his right not to be subject to ex post facto legislation to impose the increased penalty upon him.") (quotation omitted).

6. We note that the attorneys representing Robertson on this appeal have done so on a pro bono basis and we thank them for their services, which have been in the highest tradition of the bar.