OPINION *
VANASKIE, Circuit Judge.
This appeal in a habeas corpus proceeding brought by Appellant Barry Gibbs under 28 U.S.C. § 2254 is before us on a certificate of appealability that we issued on the following question: “whether the District Court erred in denying Gibbs’s claim that the Commonwealth presented insufficient evidence to sustain a jury verdict finding him guilty of two separate conspiracies.” Order, Apr. 29, 2014, Gibbs v. Shannon, et al., No. 13-4402 (3d Cir.2014). For the reasons that follow, we will affirm the District Court’s denial of Gibbs’s habeas corpus petition.
I.
We briefly summarize the relevant background, reserving our discussion of additional facts as they become pertinent .to our analysis below. On March 27, 1984, Sharon Burke, aided by several eo-conspir-ators, solicited Gibbs to murder her husband, Wayne Burke. After Gibbs agreed to be the shooter, Sharon Burke provided him with a gun, explained the layout of the security office where her husband worked, and drove him to the scene. At her house and during the trip to the security office, Sharon Burke explained that another security officer, George Mehl, would also be on duty that night, and if necessary, Gibbs *61 should be prepared to shoot or kill Mehl, too, if he interfered with Gibbs’s effort to kill Wayne Burke. Gibbs assented to take out Mehl, if necessary. Once at the security office, Gibbs approached a side window and fired six shots at the two guards. Mehl was hit in the head and died. Wayne Burke, however, was unharmed.
Shortly thereafter, Gibbs was charged in a criminal information with five separate counts stemming from the shooting: one count of attempted criminal homicide as to Wayne Burke, one count of criminal homicide for the death of Mehl,[1] two counts of criminal conspiracy to commit homicide (one for each intended victim), and one count of aggravated assault as to Wayne Burke.
There then ensued protracted proceedings that included three separate trials, numerous state court appeals, two federal habeas proceedings, and two prior appeals to our Court. We described the lengthy procedural history of this case in Gibbs v. Frank, and a brief review is helpful in framing our analysis now:
Three times a jury has convicted Gibbs of the same criminal homicide. The Pennsylvania Supreme Court vacated Gibbs’ first conviction after concluding that certain statements he made to the police were induced in violation of his Fifth Amendment rights. At Gibbs’ first trial, a government psychiatrist who had conducted a court-ordered examination of Gibbs testified about statements made by Gibbs to the psychiatrist; the psychiatrist’s testimony was presented to rebut Gibbs’ diminished capacity defense. At Gibbs’ second trial, the government psychiatrist again testified about Gibbs’ statements. But at the second trial Gibbs did not raise a diminished capacity defense. Accordingly, on habeas corpus, this Court set aside Gibbs’ second conviction, ruling that Gibbs’ statements to the psychiatrist in a court-ordered examination were compelled, and hence the presentation of the psychiatrist’s testimony as part of the government’s affirmative case — i.e., in a non-rebuttal setting-violated Gibbs’ Fifth Amendment rights.
500 F.3d 202, 203 (3d Cir.2007).
After vacating his second conviction, we ordered that he be retried or released. Id. During the course of this trial, two of his co-conspirators, Bonnie Hagen[2] and Betsy Burke, testified against him. On July 5, 2005, the jury convicted Gibbs of third degree murder and conspiracy to commit third degree murder for killing Mehl, and aggravated assault and conspiracy to commit aggravated assault for attempting to shoot Wayne Burke.[3] On September 2, 2005, Gibbs was sentenced to a prison term of 10 to 20 years on the third degree murder conviction, and consecutive 5 to 10 year prison terms on the two conspiracy convictions and the aggravated assault conviction, for an aggregate prison sentence of 25 to 50 years.
*62 On direct áppeal to the Superior Court of Pennsylvania, Gibbs argued that the evidence was insufficient to sustain both conspiracy convictions. On February 14, 2007, the Superior Court affirmed the conviction and sentence in an unpublished opinion. In addressing Gibbs’s conspiracy convictions, the Superior Court explained:
In the present case, the Commonwealth’s evidence was sufficient to establish the existence of two different conspiracies, one to murder Mr. Burke and the other to harm Mr. Mehl if it became necessary to shoot Mr. Burke. The objective of the first conspiracy was Mr. Burke’s murder. This conspiracy started in February 1984 and continued until the evening of the actual shooting, March 27, 1984. Over the two months preceding the shooting, when ■ only Mr. Burke’s murder was being planned, discussions occurred among Sharon Burke, Bonnie Hagan-Sullivan, Hagan-Sulli-van’s then boyfriend, Gary Huth, and her friends, Connie Stein and Jennie Dean. The active participants in this conspiracy were Sharon Burke, Hagan-Sullivan, and Dean. Conversations with Appellant concerning the planning and execution of Mr. Burke’s murder occurred on the telephone, at Sharon Burke’s home, and at a business establishment. There was an overt act in furtherance of this conspiracy when Appellant conducted target practice at the Burke residence the day before the shooting.
The second conspiracy had a completely different motive and objective, to harm Mr. Mehl. That conspiracy was not formed until March 27, 1984, long after the agreement to kill Mr. Burke was in place and only when it became apparent that Mr. Mehl was going to be present with Mr, Burke at work. The discussions over what to do about Mr. Mehl occurred only between Sharon Burke and Appellant and were conducted at the Burke home and in the car on the way to Hemlock Farms.
Thus, the conspiracies involved: 1) different victims, Mr. Burke and Mr. Mehl; 2) different objectives, to kill Mr. Burke and to harm Mr. Mehl; 8) different co-conspirators; 4) different time frames; and 5) different locations for the agreements. Thus, the evidence, viewed in the light most favorable to the Commonwealth was sufficient to sustain Appellant’s conviction of two counts of conspiracy.[4]
(App. at 154-55). On December 18, 2007, Gibbs’s petition for allowance of appeal to the Supreme Court of Pennsylvania was denied. Commonwealth v. Gibbs, 595 Pa. 710, 939 A.2d 889 (2007) (table).
On March 12, 2008, Gibbs filed a petition for habeas relief under 28 U.S.C. § 2254(b)(1), claiming, among other things, that the two conspiracy convictions were unsupported by the record and that the Superior Court’s decision to the contrary was an unreasonable application of federal law. On October 25, 2013, the District Court issued a Memorandum and Order denying Gibbs’s habeas petition. Gibbs v. Shannon, Civil No. 3:CV-08-0462, 2013 WL 5781107 (M.D.Pa. Oct. 25, 2013). In rejecting Gibbs’s challenge to the multiple conspiracy convictions, the District Court held that the Superior Court’s decision
was objectively reasonable as illustrated by the evidence existing in the record and cited to by the state court that supported the existence of two separate conspiracies — including different objec *63 tives, different parties, different locations and different times. For these reasons, the court finds that the state court determination was not contrary to, or an unreasonable application of, clearly established Federal law, and also was not based on an unreasonable determination of the facts in light of the evidence presented. Consequently, there is no basis to grant federal habeas relief to Petitioner on this claim.
Id. at *18. Gibbs then filed a petition seeking a certificate of appealability with this Court. On April 29, 2014, we granted a certificate of appealability on the challenge to the conspiracy convictions.[5]
II.
The District Court had jurisdiction under 28 U.S.C. §§ 2241(a) and 2254(a). We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). Where, as here, a state court has decided the merits of a petitioner’s habeas claim, habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”) is appropriate only if the state court’s adjudication of the claim “was (1) ‘contrary to, or involved an unreasonable application of, clearly established Federal law,’ or (2) ‘was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.’ ” Grant v. Lockett, 709 F.3d 224, 231 (3d Cir.2013) (quoting 28 U.S.C. § 2254(d)).
III.
Gibbs presents two central arguments on appeal: (1) that the Superior Court made unreasonable findings of fact in light of the evidence presented at trial concerning his involvement in the conspiracy to murder Wayne Burke; and (2) that the record evidence is insufficient to sustain a separate conspiracy conviction to kill or harm Mehl. We consider each contention in turn.
A. The Superior Court’s Factual Determinations
We address Gibbs’s factual challenge first, as it will frame our review of the Superior Court’s sufficiency-of-the-evidence determination. In considering this argument, we accord great deference to the Superior Court’s findings of fact. “[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.” Wood v. Allen, 558 U.S. 290, 301, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010). Rather, where a habeas petitioner challenges the factual basis for a state court’s decision, we may grant relief only if it was “ ‘based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.’” Burt v. Titlow, — U.S. -, 134 S.Ct. 10, 15, 187 L.Ed.2d 348 (2013) (quoting 28 U.S.C. § 2254(d)(2)).
Gibbs argues that the Superior Court made an unreasonable finding of fact in *64 asserting that “[t]here was an overt act in furtherance of this conspiracy when [Gibbs] conducted target practice at the Burke residence the day before the shooting,” March 26, 1984. (App. at 155.) The Commonwealth does not point to any evidence in the' record to substantiate this finding, and our review of the record reveals nothing to support this assertion. Instead, the testimony of Hagen and Betsy Burke categorically establishes that Gibbs did not become involved in the plot to murder Wayne Burke until March 27, 1984. Furthermore, Hagen testified that her friend, Dean, conducted target practice at the Burke residence on March 27. We thus conclude that the Superior Court’s factual determination in this regard is without record support and constitutes an unreasonable finding of fact. See Batchelor v. Cain, 682 F.3d 400, 413 (5th Cir.2012) (state court factual findings are unreasonable when “[t]he state advances no other factual basis” to support the findings and the court’s “review of the record reveals none”). Therefore, we do not consider this factual determination when evaluating Gibbs’s remaining argument.
Our determination that the Superior Court made an unreasonable factual finding, however, is not dispositive. As we explained in Lambert v. Blackwell, 387 F.3d 210, 235-36 (3d Cir.2004), “what factual findings remain to support the state court decision must still be weighed under the overarching standard of [§ ] 2254(d)(2).”
B. The Conspiracy Convictions
Gibbs contends that the record is insufficient to support the jury’s finding that there were two separate conspiracies, one to murder or harm Mehl and the other to murder or harm Burke.[6] Gibbs maintains that the Superior Court’s decision to the contrary violated his due process rights under In re Winship, 397 U.S. 358, 363-64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and Jackson v. Virginia, 443 U.S. 307, 321, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In considering the Superior Court’s decision, we are bound by AEDPA’s “highly deferential standard for evaluating state-court rulings,” Lindh v. Murphy, 521 U.S. 320, 333 n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), which “demands that state-court decisions be given the benefit of the . doubt,” Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam). “This distinction creates ‘a substantially higher threshold’ for obtaining relief than de novo review.” Renico v. Lett, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) (quoting Schriro v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007)). We defer to the state court’s determination “so long as ‘fairminded jurists could disagree’ on the correctness of [that] decision.” Harrington v. Richter, 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)). “Indeed, ‘a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.’ Rather, that application must be ‘objectively unreasonable.’ ” Renico, 559 U.S. at 773, 130 S.Ct, 1855 (quoting *65 Williams v. Taylor, 529 U.S. 362, 409-11, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)) (citations omitted).
Gibbs asserts that “all of the evidence presented by the Commonwealth at [his] third trial unequivocally indicates that there was but one conspiracy, the objective of which was to murder Wayne Burke.” (Appellant’s Br. at 34.) Gibbs points out that under Pennsylvania law, “[i]f a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.” 18 Pa. Cons.Stat. § 903(c). We have previously noted that § 903(c) requires the Commonwealth to prove “beyond a reasonable doubt that [the defendant] entered into two agreements or two conspiratorial relationships, one to kill [the first victim] and another to kill [or harm another victim].” Robertson v. Mem, 580 F.3d 159, 165 (3d Cir.2009) (emphasis in original).
In Robertson, we held that the evidence adduced at the petitioner’s state-court trial was insufficient to support two conspiracy convictions stemming from a simultaneous double murder, despite the Superior Court’s determination otherwise. Id. at 165. In that case, the defendants acted in concert, used a single weapon, and murdered both victims at the same time and in the same location. Id. at 161-62. Our review of the record revealed that “the Commonwealth simply failed to introduce any direct or circumstantial evidence to suggest that the murders were the result of multiple conspiracies.” Id. at 166 (emphasis added). Because the record was wholly silent as to any separate agreement — i.e., there was simply no evidence to support an inference that there were two separate agreements — we concluded that habeas relief was warranted. Id. at 167.
In Robertson, however, “[t]he only reason given by the Superior Court to support its conclusion that the evidence was sufficient to establish two conspiracies was that there were two victims.” Id. at 166. Here, the Superior Court held that the existence of two victims was only part of the evidence supporting the two conspiracy convictions. More specifically, the testimony presented during Gibbs’s third trial established that each of the conspirators— Sharon Burke, Hagen, Dean, Betsy Burke, and Gibbs — explicitly or implicitly demonstrated their agreement to murder Wayne Burke prior to Sharon Burke mentioning Mehl. As to the second conspiracy, only Sharon Burke and Gibbs agreed to harm or kill Mehl. The Superior' Court also noted that the conspiracies developed over distinct timelines and were formed at separate times.
Testimony from Hagen and Betsy Burke bears out these distinctions. Hagen testified that, starting in February and continuing into late March of 1984, Sharon Burke was the mastermind of the plot to murder Wayne Burke, bringing each of the other conspirators into the fold. After Sharon Burke convinced Hagen to join her efforts sometime in March of 1984, Hagen helped recruit several potential shooters, including her boyfriend at the time, Gary Huth. Hagen explained that Sharon Burke specifically asked Huth “if [he] would kill my husband.” (App. at 419.)
On March 26, 1984, at Sharon Burke’s insistence, Hagen agreed to find a different shooter after Huth refused to participate. Hagen stated that Sharon Burke told her to ask her friends “[i]f they would kill my stepfather,” Wayne Burke. (App. at 420.) That same evening, March 26, Betsy Burke first became aware of the developing plot to murder Wayne Burke. Betsy Burke testified that Sharon Burke told her that “they were planning on kill *66 ing my father for the insurance money.” (App. at 798.)
On March 27, acting on Sharon Burke’s instructions, Hagen successfully convinced her friend, Dean, to join the plot. Dean initially agreed to be the shooter, going so far as to conduct target practice at the Burke residence on the night of the murder. However, Dean did not feel comfortable when firing the gun, so she suggested they contact Gibbs. That same night, with Sharon Burke and Hagen listening in on the call, Dean convinced Gibbs to join the conspiracy. Hagen testified that during this call, Dean told Gibbs that the plan was to kill “Bonnie Hagen’s stepfather.” (App. at 428.)
At around 9 p.m. on March 27, Gibbs was picked up and brought to the Burke residence. Once there, either Sharon Burke or Hagen provided Gibbs with dark clothing to wear while he carried out the crime, along with a blue bandana to cover his face. Sharon Burke also gave him a loaded gun. As Sharon Burke drew out a map of the housing development’s security office, Hagen recalled that Betsy Burke showed Gibbs a picture of Wayne Burke “so that [Gibbs] knew what [he] looked like.” (App. at 486.)
On the other hand, the conspiracy to kill Mehl did not form until the evening of March 27, 1984 at around 9:30 p.m., when Sharon Burke told Gibbs that Mehl would be working alongside Wayne Burke. After Sharon Burke informed Gibbs that he may have to harm or kill Mehl to get to Wayne Burke, the record is notably devoid of any evidence tending to show that the other conspirators agreed with or provided aid to this facet of the plan. Taken as a whole and viewed in the light most favorable to the Commonwealth, the evidence supports the Superior Court’s conclusion that there was two conspiracies, having different conspirators, separate timelines, distinct agreements, and different victims.
Robertson does not compel us to reach a different conclusion. There, we principally based our holding on the Commonwealth’s failure to offer any “evidence to suggest that [the conspirators] reached separate agreements related to each murder.” 580 F.3d at 166. As discussed above, the evidence of two separate agreements — one to kill Wayne Burke, and one to harm or kill Mehl — formed at separate times between different conspirators distinguishes this case from Robertson. In light of AED-PA’s highly deferential standard, we cannot conclude that the Superior Court’s decision was based upon an unreasonable finding of fact or reflected an unreasonable application of clearly established federal law. Gibbs has failed to meet his high burden and, thus, the District Court properly denied habeas relief.
IV.
For the foregoing reasons, we will affirm the District -Court’s order denying Gibbs’s petition for habeas relief.

 This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

. The original information charged Gibbs with, the attempted murder of George Mehl. A second information changed that charge from attempted murder to homicide.

. Bonnie Hagen has been referred to as "Bonnie Hagen-Sullivan,” "Bonnie Hagan-Sullivan,” and "Bonnie Sullivan.” We refer to her as “Bonnie Hagen,” which is the spelling indicated in the transcript from Gibbs's third criminal trial. (App. at 409.)

.Although Gibbs was charged with two counts of conspiracy to commit murder, the trial court determined that the count implicating Wayne Burke should be reduced to conspiracy to commit aggravated assault because it "is a lesser included offense of conspiracy to commit homicide.” (App. at 129.)

. As explained later, although the reference to target practice by Gibbs and conversations with Gibbs at a business establishment lack support in the trial record, this error does not change our conclusion.

. Gibbs has urged that we reconsider our denial of his request for a certificate of ap-pealability on another issue: whether his Fifth Amendment privilege against self-incrimination was violated by the government's introduction in its case-in-chief of statements Gibbs made to a defense psychiatrist expert even though Gibbs did not present a mental capacity defense. We remain convinced that reasonable jurists would not debate the District Court’s rejection of this claim. In this regard, our holding in United States v. Alvarez, 519 F.2d 1036 (3d Cir.1975), is dispositive. In that case, we concluded that "the privilege against self-incrimination is not relevant” when a defendant voluntarily agrees to undergo a psychological examination. Id. at 1045. Gibbs does not point to any Supreme Court precedent that contradicts this holding. Accordingly, we again decline to expand the certificate of appealability.

. Gibbs concedes there was sufficient evidence to convict him of conspiracy to murder Wayne Burke, which was later reduced to conspiracy to commit aggravated assault. (Appellant’s Br. at 34.) The practical impact of the convictions on separate conspiracy counts was to increase his minimum prison term by five years and his maximum term by ten years.