J-S14037-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AQUIL JOHNSON | : | |
| | : | |
| Appellant | : | No. 879 EDA 2018 |

Appeal from the Judgment of Sentence March 15, 2013
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001587-2009

BEFORE:  LAZARUS, J., NICHOLS, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:                    **FILED MAY 29, 2019**

Aquil Johnson (Johnson) appeals *pro se* from the judgment of sentence of 30 to 60 years' imprisonment imposed by the Court of Common Pleas of Philadelphia County (trial court) after a jury convicted him of Attempted Murder, Aggravated Assault and Conspiracy.  We affirm the convictions but vacate the judgment of sentence and remand for resentencing.

**I.**

On September 25, 2008, Johnson and Matthew Smith (Smith) went to the home of Michael Wilson (Wilson).  Wilson let the pair inside.  While all three were walking to the living room, Johnson suddenly moved away from Wilson.  Smith then shot Wilson in the head.  Johnson and Smith grabbed a bag of marijuana off a table and fled out the backdoor.  Wilson survived the attack and called 911.  The police arrested Johnson that same day but did not

_____

*   Retired Senior Judge assigned to the Superior Court.

apprehend Smith until over a year-and-a-half later. In the interim, Johnson proceeded to a September 2009 jury trial that ended in a hung jury.

After Smith was arrested, the trial court severed Johnson's and Smith's cases and ordered that Smith's trial be held before Johnson's retrial. In May 2011, a jury acquitted Smith of all charges. Johnson meanwhile was not retried until January 2013. This time, a jury convicted him of Attempted Murder (with serious bodily injury), 18 Pa.C.S. § 901(a), Aggravated Assault, 18 Pa.C.S. § 2702(a), and Conspiracy, 18 Pa.C.S. § 903(a)(1).[1] Johnson was sentenced to serve an aggregate term of 30 to 60 years' imprisonment. After the denial of a post-sentence motion for modification, Johnson filed a direct appeal but it was dismissed when appellate counsel did not file a brief.

In July 2015, Johnson filed a *pro se* petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, requesting, among other relief, reinstatement of his direct appeal rights *nunc pro tunc*. The PCRA court appointed Johnson counsel who filed an amended petition. In March 2018, the PCRA court reinstated Johnson's appeal rights. Johnson now raises various trial and sentencing issues for our review. We have reordered the issues for ease of discussion.

---

[1] As discussed in more detail in his sentencing claims, the jury convicted Johnson of both Conspiracy to Commit Murder and Conspiracy to Commit Aggravated Assault.

- 2 -

**II.**

Johnson contends that he was denied counsel from December 17, 2012, to January 8, 2013, and that this was a critical stage in his defense for which the deprivation of counsel cannot be harmless and requires a new trial. The trial court found that Johnson requested to proceed *pro se* and voluntarily waived his right to counsel at a ***Grazier*** hearing.[2] The Commonwealth does not adopt that reasoning and instead maintains that Johnson was not denied counsel during a critical stage. We agree with the Commonwealth.[3]

**A.**

We first address the trial court's analysis, which would obviate further discussion if Johnson requested to represent himself and he knowingly, intelligently and voluntarily waived his right to counsel. During a May 2011 pretrial hearing, Johnson expressed dissatisfaction with his appointed counsel because of a lack of communication and counsel not filing certain motions that he wanted filed. Based on this, Johnson requested to proceed *pro* se. The trial court denied Johnson's *pro se* request and continued his retrial to 2012. Johnson's case was subsequently relisted multiple times. As far as the

---

[2] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998) (setting forth procedure for courts to determine on record that defendant wishing to proceed *pro se* is knowingly, intelligently and voluntarily waiving right to counsel).

[3] This claim involves a question of law for which our standard of review is *de novo* and our scope of review is plenary. ***See Commonwealth v. Zrncic***, 131 A.3d 1008, 1011 (Pa. Super. 2016).

certified record is concerned, Johnson never renewed his *pro se* request after the May 2011 hearing.

Despite the lack of a motion requesting to proceed *pro se*, the trial court held a **Grazier** hearing on December 17, 2012. The transcript indicates that Johnson was confused as to the reason for the hearing. Johnson expressed confusion as to why he was in court and explicitly stated at the beginning of the proceeding, "I'm telling you I never requested to represent myself in court." N.T., 12/17/12, at 3. The trial court correctly informed him that he was not entitled to counsel of his choice and said Johnson would need to either proceed with current counsel or represent himself. For unknown reasons, the court then proceeded to conduct a **Grazier** colloquy. The hearing concluded with the court ordering Johnson to represent himself with his appointed counsel serving as stand-by counsel. On January 8, 2013, Johnson stated that he did not want to represent himself and his appointed counsel resumed as counsel.

From our review of the transcript, Johnson did not intend to represent himself but instead sought the appointment of a new attorney. The trial court properly informed Johnson that he was not entitled to counsel of his choice but that does not warrant conducting a **Grazier** hearing. Unless and until Johnson requested to proceed *pro se*, the proper course was to simply inform him that his appointed counsel would remain counsel of record.

**B.**

However, the mere fact that Johnson was erroneously denied counsel for that time period does not end the matter.[4] We must still determine whether the three-week period leading up to the retrial was a critical stage:

> As a general rule, a conviction will not be vacated for a violation of the Sixth Amendment right to counsel in the absence of a showing that the reliability of the defendant's trial was undermined. However, the United States Supreme Court has identified several circumstances in which prejudice resulting from a violation of the Sixth Amendment right to counsel is presumed. One of these presumptively prejudicial circumstances arises when the accused has suffered a complete denial of counsel at a critical stage of trial.

_____

[4] Elements of Johnson's claim implicate trial counsel ineffectiveness, raising the question of whether this claim may be heard on direct review. Because Johnson is claiming that the trial court erroneously stripped him of counsel during the three-week period, that discrete claim is properly before us. Notwithstanding, we note that aspects of Johnson's underlying claim raise allegations of trial counsel ineffectiveness. **See** Johnson's Brief at 34-35 (averring that the three-week period was a critical stage because counsel would have interviewed and subpoenaed witnesses, reviewed evidence, developed trial strategy, and prepared witnesses to testify).

As to those claims, we note that counsel could have requested a postponement if counsel was unprepared to proceed. Johnson's ultimate claim appears to simply be that counsel was unprepared for trial due to Johnson representing himself and he was prejudiced by **that** failure, not by being deprived of counsel for the three-week period. Indeed, Johnson cites **United States v. Cronic**, 466 U.S. 648 (1984), which sets forth a presumptive prejudice doctrine where counsel has been denied entirely or during a critical stage. We note that **Cronic** rejected a variation of the theory alleged by Johnson here. **Woods v. Donald**, ––– U.S. –––, 135 S.Ct. 1372, 1377, 191 L.Ed.2d 464 (2015) (_per curiam_) ("In **Cronic** itself, we rejected the defendant's claim that his counsel's lack of experience and short time for preparation warranted a presumption of prejudice[.]"). In any event, Johnson is free to pursue claims of ineffectiveness regarding trial counsel's performance on collateral review. We here address only the three-week period.

*Commonwealth v. Padilla*, 80 A.3d 1238, 1253 (Pa. 2013) (internal citations and quotations omitted). A critical stage "is one in which the accused's substantive rights may be affected," *Commonwealth v. D'Amato*, 856 A.2d 806, 821 (Pa. 2004), and is "characterized by an opportunity for the exercise of judicial discretion or when certain legal rights may be lost if not exercised at that stage." *Commonwealth v. Johnson*, 828 A.2d 1009, 1014 (Pa. 2003) (citations omitted). For purposes of the Sixth Amendment, the United States Supreme Court has observed that critical stages have been defined "as proceedings between an individual and agents of the State (whether formal or informal, in court or out) that amount to trial-like confrontation[.]" *Rothgery v. Gillespie County*, 554 U.S. 191, 212 n.16 (2008) (internal quotations and citations omitted).

Johnson fails to identify any critical stage at which he was denied counsel. There were no proceedings between the December 17, 2012 hearing and the January 8, 2013 start of jury selection. Not only were there no confrontational proceedings, nothing at all occurred with regard to his trial during the three-week period and appointed counsel/stand-by counsel represented him at trial.

## III.

In his next claim, Johnson argues that the Commonwealth knowingly presented false testimony in violation of *Napue v. Illinois*, 360 U.S. 264 (1959). At the retrial, Johnson testified that he was on his way to the hospital

when he was arrested and that the police took him there. On rebuttal, the Commonwealth recalled Detective Matthew Farley, the lead investigator, to testify that Johnson was never taken to the hospital. Relying on medical records obtained after trial, Johnson maintains this was false testimony because the records show that the police took him to the hospital on September 28, 2008.

The Commonwealth counters that this claim is waived because Johnson failed to make a contemporaneous objection at trial. Pennsylvania Rule of Evidence 103(a) states that a party may claim error in the admission of evidence only if the party, on the record, "makes a timely objection." Pa.R.E. 103(a). This Court has long held that "[f]ailure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal." **Commonwealth v. Thoeun Tha**, 64 A.3d 704, 713 (Pa. Super. 2013) (citation omitted). Johnson argues that he did not waive this claim because the PCRA court did not inform him of his right to file post-sentence motions, but a post-sentence motion cannot retroactively preserve an already-waived claim. **See** Pa.R.A.P. 302. Accordingly, the claim is waived.

Even if preserved, Detective Farley's testimony was not false. He testified only that Johnson was not taken to the hospital on the day he was arrested. Based on Johnson's own argument, Farley's statement was factually correct because Johnson was not taken to the hospital until three days after he was arrested.

**IV.**

Next, Johnson argues that the trial court judge should have recused himself due to his bias as demonstrated by his comments during trial and sentencing. The Commonwealth argues the claim is waived because it was not raised at trial or in a timely post-sentence motion.

Generally, "[a] party seeking recusal or disqualification [is required] to raise the objection at the earliest possible moment, or that party will suffer the consequences of being time barred." **Lomas v. Kravitz**, 130 A.3d 107, 120 (Pa. Super. 2015) (*en banc*) (quotation omitted). However, "there may be circumstances in which objections have a deleterious effect on the jury or even on the judge whose behavior is extremely unprofessional." **Harman ex rel. Harman v. Borah**, 756 A.2d 1116, 1125 (Pa. 2000). But even in these instances, the party must still raise recusal in a post-trial motion. **See id**. at 1126 ("[T]he general rule remains that a party waives an issue concerning perceived trial court error, if the party fails both to preserve the issue with a timely and specific objection at trial and present it in post-trial motions."). Because Johnson never raised this claim at trial or in a post-trial motion, this claim is waived.[5]

---

[5] Johnson argues this claim is not waived because the PCRA court did not inform him of his right to file post-sentence motions *nunc pro tunc*. However, when a PCRA court reinstates direct appeal rights *nunc pro tunc*, the petitioner is not automatically entitled to reinstatement of his post-sentence rights *nunc pro tunc*. **See Commonwealth v. Liston**, 977 A.2d 1089, 1090 (Pa. 2009).

**V.**

Johnson also contends that Wilson's testimony was irreparably tainted for two reasons. First, after Johnson's first trial, the Philadelphia District Attorney's Office learned that the assistant district attorney at the first trial had a romantic relationship with Wilson. This resulted in the Office of the Attorney General assuming the prosecution. Second, Wilson admitted at Smith's 2011 trial that in preparation of testifying, he reviewed his notes of testimony from Johnson's 2009 trial.

The Commonwealth argues that this claim is waived because it was not raised by Johnson before or at his retrial. Both of the bases for the alleged taint would have been known to Johnson before his retrial and could have been raised with the trial court. By failing to do this, the issue is waived. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").[6]

---

As a result, we are limited to the post-sentence motion that was actually filed which did not raise the issue of recusal. We note, though, that Johnson addressed waiver in his reply brief, and the Commonwealth applied for and was granted permission to file a surreply brief addressing waiver. Johnson has applied for permission to file a response to that surreply brief. We find this issue requires no further briefing and deny Johnson's application.

[6] As with his false testimony claim, a post-sentence motion would not have retroactively preserved an already-waived issue.

**VI.**

Johnson next alleges that the Commonwealth violated ***Brady v. Maryland***, 373 U.S. 83 (1963), by failing to turn over (1) a report about Wilson's relationship with the assistant district attorney and (2) any police reports about him being treated at the hospital on September 28, 2008. The Commonwealth responds that these claims are waived for failure to be raised in the trial court.

***Brady*** claims are subject to waiver and will be so deemed if they could have been raised in an earlier proceeding. ***See Commonwealth v. Pruitt***, 162 A3d 394, 404 (Pa. 2017) (finding ***Brady*** claims waived when information was known or should have been known to the defendant and could have been raised at trial). Here, Johnson requested and received the transcripts of Smith's 2011 trial when the relationship was revealed before his retrial. Johnson knew about the relationship and was free to seek discovery about it. Likewise, as to his own September 28, 2008 hospital trip, he is speculating that there were police reports concerning his trip. But there is no indication that any such reports exist, not to mention the fact that his counsel would have been free to obtain the hospital records and present them at trial. As a result, his ***Brady*** claims are waived.

**VII.**

Johnson also contends that Smith's 2011 acquittal estopped the Commonwealth from trying him as either an accomplice or co-conspirator of

Smith. This is essentially a nonmutual collateral estoppel claim meaning Johnson seeks to rely on a prior proceeding in which he was not a party. However, Pennsylvania courts have routinely rejected such claims when raised in a criminal context.[7]

First, as to accomplice liability, Section 306(g) of the Pennsylvania Crimes Code states:

> **(g) Prosecution of accomplice only.--**An accomplice may be convicted on proof of the commission of the offense and of his complicity therein, though the person claimed to have committed the offense … has been acquitted.

18 Pa.C.S. § 306(g). Relying on Section 306(g), our Supreme Court held in **Commonwealth v. Brown**, 375 A.2d 331 (Pa. 1977), that the acquittal of one criminal defendant will not bar an issue from being litigated again in the prosecution of another defendant in a separate trial, even if it involves the same criminal episode. **See id**. at 334-35 (holding trial court erred in dismissing homicide charge against accomplice based on the acquittal of the principal for the same killing). This Court has cited to **Brown** in rejecting nonmutual collateral estoppel claims in criminal cases, emphasizing that collateral estoppel would require issue preclusion in a criminal case only when the defendants are the same as the parties to the prior adjudication. **See**,

---

[7] Because the claim implicates a question of law, our standard or review is *de novo*. **See Commonwealth v. Vargas**, 947 A.2d 777, 780 (Pa. Super. 2008).

*e.g.*, *Commonwealth v. Rende*, 485 A.2d 9 (Pa. Super. 1984) (holding Commonwealth was not collaterally estopped from prosecuting defendant on murder charge when accomplice was acquitted at a prior trial).

Recognizing that *Brown* is still good law, Johnson attempts to distinguish it by noting that he was tried once before Smith's 2011 acquittal. Although Johnson is correct he was subject to jeopardy before, collateral estoppel still does not apply in a criminal case unless there is "both mutuality of parties and that the previous acquittal has put the defendant in jeopardy." *Id*. at 11. Johnson was not a party to Smith's 2011 jury trial, the prior adjudication that he seeks to rely. Because he was not in jeopardy in that proceeding, his claim of collateral estoppel as to accomplice liability warrants no relief.

The same holds true for co-conspirator liability. In *Commonwealth v. Byrd*, 417 A.2d 173 (Pa. 1980), the defendant was convicted of Conspiracy while his alleged co-conspirator was acquitted at a later trial. On appeal, the defendant argued that this acquittal entitled him to relief. Although the defendant's claim was not premised on collateral estoppel, the *Byrd* Court still found *Brown* instructive and held that the subsequent acquittal of the defendant's alleged co-conspirator did not prevent him from being convicted of Conspiracy. *See id*. at 178-79. We considered a similar challenge in *Commonwealth v. Phillips*, 601 A.2d 816 (Pa. Super. 1992), *affirmed*, 633 A.2d 604 (Pa. 1994), also involving the defendant being tried *after* the alleged

co-conspirator was acquitted at a jury trial. Relying on **Byrd**, this Court held that "the prior acquittal of a sole co-conspirator in a separate trial does not preclude finding the subsequently tried co-conspirator guilty of conspiracy." **Id**. at 820.

Like **Brown** for accomplice liability, **Byrd** and **Phillips** remain good law for co-conspirator liability, and Johnson cites to no authority that would preclude their application. Thus, we hold that the Commonwealth was not collaterally estopped by Smith's 2011 acquittal from trying Johnson as either an accomplice or co-conspirator at his 2013 retrial.

## VIII.

For his final claim of error that occurred at trial, Johnson raises a sufficiency claim contending that Wilson's testimony was so inconsistent and contradictory so as to render the jury's verdict the product of conjecture. We agree with the Commonwealth that this is an unpreserved weight-of-the-evidence claim. To persevere such a claim, it must be raised with the trial court in a motion for new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion. Pa.R.Crim.P. 607(A). Johnson never raised a challenge to the weight of the evidence either orally or in writing at or before sentencing. In addition, he did not file a timely post-sentence motion to raise the issue. The claim is, therefore, waived.

Even if preserved, no relief is due. Johnson focuses on Wilson's prior statements not mentioning that he took a bag of marijuana but later stated that Johnson and Smith took a bag of marijuana as they ran out of the home. He argues that this was the most important issue in the case because the Commonwealth's theory was that he and Smith went to Wilson's home to rob him.[8] To prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Commonwealth v. Rodriguez***, 174 A.3d 1130, 1140 (Pa. Super. 2017). Wilson testified that Johnson moved out of his way so that Smith could then shoot him. Given that the theft of the marijuana was not an element of any of the offenses, Johnson's prior inconsistent statements about the theft would not be significant enough to render the jury's verdict a mere guess.

## IX.

Lastly, Johnson presents three sentencing claims for our review. As noted, Johnson was sentenced to an aggregate 30 to 60 years' imprisonment. For Attempted Murder, the court sentenced him to 20 to 40 years' imprisonment based on a jury finding of serious bodily injury.[9] The trial court

---

[8] Johnson also claims Wilson changed his testimony about other essential issues about the case but does not state what those inconsistencies were.

[9] In its Pa.R.A.P. 1925(a) opinion, the trial court states that Johnson's sentence for Attempted Murder was enhanced by using the deadly weapon

imposed a consecutive sentence of 10 to 20 years' imprisonment for Conspiracy. Finally, the court determined that Aggravated Assault merged with Attempted Murder.

Johnson alleges multiple sentencing errors. We first address Johnson's claim that his sentence is illegal under 18 Pa.C.S. § 906, which states that "[a] person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime."[10]

The confusion in this case centers on the Commonwealth's decision to list the goal of the criminal conspiracy as "assault/murder." While the Conspiracy charge appears on the information as one count, the trial judge submitted the offense to the jury as comprising two distinct offenses: (1) Conspiracy to Commit Murder; and/or (2) the lesser-included Conspiracy to Commit Aggravated Assault. The trial court imposed consecutive sentences

_____

enhancement. **See** 204 Pa. Code. § 303.10(a). But the deadly weapon enhancement does not enhance the statutory maximum penalty; it enhances the guideline sentence recommendation.

[10] This Court has interpreted "convicted" to mean entry of a judgment of sentence rather than a finding of guilty by a jury. **See Commonwealth v. Grekis**, 601 A.2d 1284, 1295 (Pa. Super. 1992). Thus, 18 Pa.C.S. § 906 does not prohibit a jury from convicting a defendant of multiple inchoate crimes designed to culminate in the same crime.

for Attempted Murder and Conspiracy to Commit Aggravated Assault, reasoning that the two crimes are separate.[11]

The fact that the Commonwealth alleged two different theories presents semantical difficulties as illustrated by the fact that the court instructed the jury that the Conspiracy count was a "charge of conspiracy to commit **either** murder or aggravated assault." N.T., 1/11/13, at 68 (emphasis added). But in the jury verdict sheet, the trial court split the Conspiracy charge into two offenses, asking the jurors to determine Johnson's guilt as to Conspiracy to Commit Murder "and/or" Conspiracy to Commit Aggravated Assault. *See id*. at 85.[12]

Relying on *Commonwealth v. Kelly*, 78 A.3d 1136 (Pa. Super. 2013), the Commonwealth argues that the trial court properly imposed a sentence for Conspiracy to Commit Aggravated Assault because it is a distinct crime from Murder. In *Kelly*, the Commonwealth charged Kelly with, among other offenses, Attempted Murder and Conspiracy. As here, the Conspiracy charge was set forth in the information as encompassing either a conspiracy to commit murder and/or a conspiracy to commit aggravated assault. The jury

---

[11] Because Johnson's claim pertains to the legality of sentence, our standard of review is *de novo* and scope of review is plenary. *See Commonwealth v. Melvin*, 172 A.3d 14, 19 (Pa. Super. 2017).

[12] Although not included in the certified record, we are able to determine the contents of the jury verdict sheet based on the verdict read in court.

was not given any special interrogatory and convicted Kelly of Attempted Murder and Conspiracy. We *sua sponte* elected to address the legality of the sentence. Significantly, we stated that "[s]ince aggravated assault and murder are not the same crime, 18 Pa.C.S. § 906 does not automatically apply to the conspiracy to commit aggravated assault and attempted murder convictions." *Id*. at 1145. We then examined the general verdict and concluded that Kelly must be given the benefit of the jury's ambiguous verdict as to Conspiracy:

> In **Commonwealth v. Riley***,* 811 A.2d 610 (Pa. Super. 2002), this Court held that where the jury renders a general verdict and there is an absence of clear evidence of the jury's intent, a defendant can only be sentenced for conspiracy to commit the less serious underlying offense. In this case, that would mean the court could only have sentenced the defendant for conspiracy to commit aggravated assault. The sentencing papers reflect that the concurrent sentence was imposed for that crime. However, the **Riley** Court also concluded that the defendant must be given the benefit of the jury's ambiguous verdict. Instantly, the benefit would derive from concluding that the conspiracy verdict was for conspiracy to commit murder and not conspiracy to commit aggravated assault, since the former charge would automatically merge with attempted murder. Phrased differently, construing the verdict as conspiracy to commit aggravated assault could have allowed the court to sentence Appellant consecutively for that crime and attempted murder, **see Commonwealth v. Jacobs***,* 39 A.3d 977 (Pa. 2012)], though it elected not to follow that path.
>
> While the concurrent nature of the sentences herein renders any *vacatur* academic, our Supreme Court in **Jacobs***,* **supra***,* nevertheless addressed whether it was proper to sentence a defendant concurrently for attempted escape and conspiracy to commit escape based on an alleged ambiguous verdict. Ultimately, the **Jacobs** Court concluded that the sentences were lawful because the jury verdict was not ambiguous and the two inchoate crimes were not designed to culminate in the same escape crime. **In contrast, the evidence in this case is not**

> **clear as to the jury's intent**. Therefore, we agree with the trial court that under the precise facts herein the sentence for conspiracy and attempted murder should have merged, albeit on different grounds. Accordingly, we vacate Appellant's conspiracy sentence.

*Id*. at 1145–46 (footnote omitted).

There is no dispute that "§ 906 does not **automatically** apply to the conspiracy to commit aggravated assault and attempted murder convictions," *Id*. at 1145 (emphasis added). The Commonwealth, however, apparently interprets *Kelly*'s pronouncement that "aggravated assault and murder are not the same crime" to mean that § 906 **never** applies to those offenses. That interpretation is incorrect. Notably, *Kelly* cites *Jacobs*, which holds that § 906 does not apply where the acts are intended to culminate in two separate crimes. In this respect, the facts in *Kelly* are quite different than this case because there "[Kelly] and Philip Hummel approached the sixteen-year-old victim and his girlfriend while they were sitting on the steps of the victim's house. Appellant opened fire as the victim pushed his girlfriend inside the home." Hence, there were two potential victims and the conspiracy could have been to kill and/or commit serious bodily injury upon one or both persons.

More apropos is our decision in *Commonwealth v. Ford*, 461 A.2d 1281 (Pa. Super. 1983), where we held that separate sentences for Conspiracy and Attempted Murder were impermissible under § 906:

> [D]espite the Commonwealth's argument to the contrary, we hold that the appellant has *not waived* his attack on the legality of the

sentence imposed for Attempted Murder, Criminal Conspiracy and Possession of an Instrument of Crime. *See **Commonwealth v. Smith***, 499 Pa. 507, 454 A.2d 1 (1982). Thus, we find the appellant's convictions for the three aforementioned inchoate crimes to be violative of 18 Pa.C.S.A. § 906, which provides:

A person may not be convicted of more than one offense defined by this chapter for conduct designed to commit or to culminate in the commission of the same crime.

All three offenses fall within the purview of Chapter 9 of the Crimes Code, the Chapter referred to in Section 906, and it is apparent from our review of the facts that the offenses were perpetrated with one objective in mind—the (attempted) killing of Lawrence Brown. Accordingly, appellant's conviction for the three crimes was improper.

*Id*. at 1289 (some internal citations omitted).

Here, as in ***Ford***—and unlike ***Kelly***—there is no question that the goal of the conspiracy was intended to culminate in one crime: the death of Wilson. Consequently, once the jury convicted Johnson of Conspiracy to Commit Murder, it was also necessarily finding him guilty of Conspiracy to Commit Aggravated Assault as a lesser-included offense and not as a distinct substantive offense.[13]

For the foregoing reasons, the trial court erred by treating Johnson's conviction for Conspiracy to Commit Aggravated Assault as if it was a distinct

---

[13] While the Commonwealth's information charged Johnson with one count of Conspiracy with a criminal objective of "assault/murder", that in context simply appears to reflect an acknowledgement that the jury might not find, beyond a reasonable doubt, that Johnson and Smith specifically intended to kill Wilson.

crime designed to culminate in a different result from the Conspiracy to Commit Murder. Accordingly, per the express terms of § 906, he cannot be sentenced on both charges.[14] We, thus, vacate Johnson's judgment of sentence for Conspiracy to Commit Aggravated Assault.[15] Because our decision disrupts the trial court's sentencing scheme, we must vacate the entire judgment of sentence.[16]

As to Johnson's remaining sentencing claim regarding whether the sentencing court illegally imposed a sentence for Attempted Murder, we decline to address that issue because of our recent decision in **Commonwealth v. Bickerstaff**, --- A.3d ---, ---, 2019 WL 850582 (Pa. Super. filed February 22, 2019), a case decided after briefs were filed in this appeal. That case also involved sentencing under 18 Pa.C.S. § 1102(c), which

---

[14] Our Supreme Court recently granted allowance of appeal to address whether Conspiracy to Commit Murder and Conspiracy to Commit Aggravated Assault can be considered separate conspiracies for 18 Pa.C.S. § 906 purposes when the defendant's "actions were the object of one conspiratorial agreement and relationship[.]" **Commonwealth v. King**, --- A.3d ---, ---, 2019 WL 1033102 (Pa. filed March 5, 2019).

[15] We note that 18 Pa.C.S. § 906 prohibits multiple sentences for inchoate crimes designed to culminate in the same crime. It does not proscribe which offense the court shall impose sentence on. Thus, although the trial court cannot sentence on both Attempted Murder and Conspiracy, it retains the discretion to choose which inchoate offense to impose sentence on.

[16] Johnson argues in the alternative that Attempted Murder and Conspiracy should have merged based on the jury because he was convicted as an accomplice for Attempted Murder. We need not address the merits of this claim since we have granted the same relief based on 18 Pa.C.S. § 906.

provides that a defendant convicted of Attempted Homicide "where serious bodily injury results may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 40 years." If serious bodily injury did not result, then the defendant "may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 20 years." Consequently, "[s]erious bodily injury is a fact that must be proven before a maximum sentence of [40] years may be imposed for attempted homicide." *Commonwealth v. Barnes*, 167 A.3d 110, 117 (Pa. Super. 2017). In order for the 40-year maximum sentence to apply, the Commonwealth must provide notice to the defendant that it seeks to prove serious bodily injury. *See id*.

In *Bickerstaff*, we addressed a similar factual scenario, *albeit* in the context of PCRA review. Bickerstaff was charged with, among other crimes, Attempted Murder and Aggravated Assault. For the Attempted Murder charge, neither the criminal complaint nor the information alleged serious bodily injury. In addition, the Commonwealth did not give any pretrial notice of its intent to prove serious bodily injury related to Attempted Murder. The first mention of serious bodily injury as to Attempted Murder was in the jury verdict sheet, which Bickerstaff's counsel did not object to. The jury ultimately found Bickerstaff guilty of Attempted Murder with serious bodily injury, which then allowed the trial court to sentence him to 20 to 40 years' imprisonment. This Court affirmed the judgment of sentence on direct appeal.

Bickerstaff unsuccessfully sought PCRA relief. On appeal, Bickerstaff succeeded on his claim that trial counsel ineffectively failed to object to the jury instructions and that the failure to object prejudiced Bickerstaff. Like this case, there was no dispute that the victim **actually** suffered serious bodily injury. Bickerstaff argued that the special jury interrogatory did not cure any of the asserted defects and was insufficient to allow the court to enhance his maximum sentence for Attempted Murder. We agreed:

> [T]he Commonwealth charged [Bickerstaff] with only attempted murder generally and did not include the element of serious bodily injury in the criminal complaint or information. The Commonwealth also failed to put [Bickerstaff] on notice that the Commonwealth intended to prove attempted murder/serious bodily injury at trial. The Commonwealth did not prosecute [Bickerstaff] for attempted murder/serious bodily injury. Furthermore, the court did not instruct the jury on serious bodily injury related to the attempted murder offense. Instead, the court gave a jury instruction only on serious bodily injury related to aggravated assault. Here, [Bickerstaff] was essentially ambushed with the verdict sheet's special interrogatory that raised for the first time a question about serious bodily injury in connection with attempted murder. Prior to the interrogatory, [Bickerstaff] had no warning that there was even an issue of serious bodily injury associated with attempted murder. The charges, complaint, information, and jury instructions for attempted murder made no mention of associated serious bodily injury. Absent more, this surprise interrogatory was not enough to put [Bickerstaff] on notice to defend against attempted murder/serious bodily injury.

*Id*. at *7 (citation omitted).

This case is aligned with *Bickerstaff* in most respects but importantly **differs** in that it did not analyze the claim as a pure question of law regarding legality of sentence and instead appeared to credit the notion that counsel could have objected. We decline to address whether that distinction warrants

- 22 -

a different treatment as we have vacated judgment of sentence and remanded for resentencing on all counts. On remand, the sentencing court may or may not determine that **Bickerstaff** applies. Alternatively, the Commonwealth may elect to concede that Johnson would ultimately succeed in collateral review, thus obviating the need to address this question. If not, and the trial court imposes a maximum sentence exceeding 20 years at the Attempted Murder conviction, Johnson retains the ability to re-raise this issue on any appeal from the new judgment of sentence.

Convictions affirmed. Judgement of sentence vacated. Case remanded for resentencing. Application for Relief denied. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/29/19